**YOUNG ENTERPRISES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 90–614C.**

United States Claims Court.

Aug. 7, 1992.

Andrew J. Kilpatrick, Jr., Jackson, Miss., for plaintiff.

Agnes M. Brown, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen and Sharon Y. Eubanks, Washington, D.C., for defendant.

## OPINION AND ORDER

TURNER, Judge.

Plaintiff ("Young") brought this action pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988) ("CDA"). Count I of Young's complaint seeks review of the contracting officer's August 3, 1989 final decision denying Young's July 28, 1989 claim regarding differing site conditions and defective specifications. Count II seeks review of the contracting officer's October 25, 1989 final decision denying Young's May 4, 1989 delay claim.

Pursuant to Rules 12(b)(1) and 56 of the United States Claims Court, defendant moves to dismiss Count I of the complaint for Young's failure to properly certify its July 28, 1989 claim. Alternatively, if the court determines that the claim was properly certified, defendant moves for summary judgement on Count I. In addition, defendant moves for summary judgment on Count II.

For the reasons stated below, we conclude that defendant's motion to dismiss Count I should be denied, and defendant's motion for summary judgment on Counts I and II should be denied without prejudice.

### I

Young was awarded contract no. GS–07P–86–HUC–137 by General Services Administration ("GSA") on March 10, 1987. The fixed-price contract was for the interior renovation of the United States Post Office Terminal Annex in Dallas, Texas. The contract specified an original performance period of 600 days and an original contract price of $11,698,000. GSA issued Young a notice to proceed on April 13, 1987, resulting in an original contract completion date of December 3, 1988; GSA subsequently issued 84 modifications extending the completion date to June 16, 1989.

Young's contract required extensive renovation of the interior of the building, including all interior walls, installation of heating, air conditioning, and plumbing and extensive electrical work, including providing an Uninterruptible Power Supply ("UPS") system with emergency power. The UPS system involved installation of underground fuel tanks on the south side of the building to support the generators. Young was also responsible for installation of a telecommunications system.

In addition to Young, four other contractors worked on the Terminal Annex renovation project: Anderson Excavation and Construction, Rodco Construction Company, Landmark Restoration Company and Singleton Construction Company. Initially, the Terminal Annex project was intended to be a phased project with one contractor completing its work followed by the next contractor. However, from the outset this

did not occur, resulting in an overlap of performance by the different contractors.

Young entered into subcontracts with Sedalco, Inc. ("Sedalco") for the civil aspects of the project and Milton B. Levy & Son ("Levy") for the mechanical work. Young's contract required the installation of three underground fuel storage tanks on the south side of the building. Levy was subcontracted by Young to perform this work. Prior to Levy beginning excavation to install the fuel tanks, a 27-inch storm drain line was discovered. Defendant agrees that Young's original contract documents did *not* indicate the existence of the storm drain line.

On June 4, 1987, GSA notified Young by letter of the existence of the storm drain line. On July 22, 1987, GSA advised Young to delete one of the three fuel tanks that was originally planned to be installed. In response to a request by GSA, Young prepared a break-down of the costs associated with the deletion of a 10,000 gallon fuel tank. The deletion of the tank ultimately resulted in a credit to GSA in the amount of $25,232.91. On August 6, 1987, Young received new contract drawings from GSA and on September 28, 1987 Young's subcontractor Levy began excavation at the site. However, shortly thereafter a cave-in occurred resulting in extensive damage to the area.

Independent of the fuel tank installation, Young's contract required the installation of a return air duct and grille near a furrout column. This installation was to be accomplished by Young's subcontractor Levy. Young alleges that the existing return air grille was too large to allow construction of a new furrout column to enclose an existing sewer line. Thus in order to clear the furrout column, Levy ordered and installed a smaller return air grille than was called for by the original specifications.

Pursuant to the numerous modifications, the contract completion date was extended from December 3, 1988 to June 16, 1989. Substantial completion of the project was achieved on May 16, 1988, approximately one year prior to the contract completion date.

On July 28, 1989, Young submitted a request seeking an equitable adjustment in the amount of $63,445 for additional labor and material resulting from the differing site conditions involving (1) the 27-inch storm drain line and (2) the defective specifications with respect to the return air grille. The claim certification, signed by Young's Executive Vice President, Don McKibben, stated as follows:

I hereby certify that this claim is made in good faith; that the supporting data is accurate and complete to the best of my knowledge and the amount requested accurately reflects the contract adjustment to which we believe the government is liable.

That claim was denied by the contracting officer on August 3, 1989.

On May 4, 1989, Young submitted a second claim to the contracting officer, alleging 127 days of government-caused delay from December 31, 1987 through May 16, 1988. This claim sought $605,514 on behalf of Young and its subcontractors Sedalco and Levy. On October 25, 1989, the contracting officer denied this claim. Young has appealed both of the contracting officer's final decisions.

II

Defendant first moves to dismiss Count I of the complaint for Young's failure to properly certify its July 28, 1989 claim as required by 41 U.S.C. § 605(c)(1).

As a prerequisite to litigation of a claim in this court, the CDA imposes the requirements that the claim first be submitted to the agency's contracting officer for a decision. The CDA mandates: "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). In addition, the CDA requires that claims over $50,000 be certified. 41 U.S.C. § 605(c)(1) specifically provides:

For claims of more than $50,000.00, the contractor shall certify that the claim is

made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

A proper § 605(c)(1) certification must contain the following three elements to which the contractor attests:

1) that the claim is made in good faith;

2) that the supporting data are accurate and complete to the best of the contractor's knowledge and belief, and

3) that the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable.

*Aeronetics Div. v. United States,* 12 Cl.Ct. 132, 135 (1987). The certification must simultaneously make all three assertions required by the CDA. *W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 677 F.2d 850, 852 *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). In addition, it is well

settled that certification is a jurisdictional prerequisite to proceeding with a claim under the CDA. *See United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 579 (Fed.Cir.1991); *Ball, Ball & Brosamer Inc. v. United States,* 878 F.2d 1426, 1428 (Fed. Cir.1989).

■ Defendant asks the court to dismiss Count I on the sole grounds that Young omitted the words "and belief" from its claim certification. This issue is identical to one of the issues recently presented in *Alcan Elec. & Eng'g Co. v. United States,* 24 Cl.Ct. 704 (1992). In *Alcan,* we held that a certification lacking the exact same two words "and belief" substantially complied with the statutory requirements of the CDA and was therefore properly certified. *Id.* For the same reasons articulated in *Alcan,* we similarly decline to grant defendant's motion for partial dismissal in this case.

A side by side comparison of the CDA statute with Young's certification reveals the following:

| CDA statute requirements | Young's certification |
|---|---|
| 1. that the claim is made in good faith | I hereby certify that this claim is made in good faith; |
| 2. that the supporting data are accurate and complete to the best of the contractor's knowledge and belief [emphasis added] | that the supporting data is accurate and complete to the best of my knowledge ... [emphasis added] |
| 3. that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable. | and the amount requested accurately reflects the contract adjustment to which we believe the government is liable. |

---

"The standard to be used in determining whether a certification meets the language requirements of 41 U.S.C. § 605(c)(1) is 'substantial compliance.' Exact duplication of the statutory language is not required" to validate a certification. *Alcan,* 24 Cl.Ct. at 707; *see also United States v. General Elec. Corp.,* 727 F.2d 1567, 1569 (Fed.Cir. 1984); *Robin Indus. Inc. v. United States,* 22 Cl.Ct. 448, 455 (1991). After comparing Young's certification with § 605(c)(1), we conclude that Young has substantially com-

plied with the statutory requirements of the CDA.

### III

Defendant moves for summary judgment on both Counts I and II of the complaint.

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91

L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987). A "material fact" is a fact that could make a difference in the outcome of a case. *Curtis v. United States,* 144 Ct.Cl. 194, 168 F.Supp. 213, 216 (1958), *cert. denied,* 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959). Only disputes over facts that might affect the outcome of a suit properly will prevent the court from entering summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ The moving party initially bears the burden of demonstrating the absence of any genuine issue of material fact. That burden may be discharged by showing the absence of evidence in support of the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has discharged its burden, the burden of proof then rests upon the party opposing the motion to prove by sufficient evidence that a genuine issue of material fact positively remains. *Celotex Corp.,* 477 U.S. at 324–25, 106 S.Ct. at 2553.

■ A trial court may exercise discretion to deny summary judgment when it is not reasonably certain that there is no triable issue of fact. The court may also postpone a decision until it can be founded on a more complete factual record. *Virgil v. Time, Inc.,* 527 F.2d 1122 (9th Cir.1975), *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 (1976); *see also Balboa Ins. Co. v. United States,* 775 F.2d 1158, 1165 (Fed.Cir.1985) (summary judgment is improper when government has not adequately shown the absence of dispute on all issues of material fact); *Mulholland v. United States,* 16 Cl.Ct. 252, 267 (1989) (when genuine issues of material fact have not been definitively established by the parties, neither is entitled to summary relief).

After an extensive review of the evidence submitted, we conclude that the factual complexity of circumstances and events during the course of the contract performance and the need for a thorough, detailed understanding of the factual context giving rise to the alleged differing site conditions and delays makes summary judgment on either Count I or II inappropriate at this juncture.

## A

■ Count I of Young's complaint seeks compensation for differing site conditions (the undisclosed storm drain and the return air grille). Young claims that the 27–inch storm drain line constitutes a differing site condition. Defendant concedes that Young's original contract documents did not indicate the existence of the storm drain. Nevertheless, defendant argues that Young was aware of the storm drain's existence in sufficient time to compensate for the problem. Defendant also contends that any additional work or materials required as a result of the undisclosed storm drain were not caused by the government but were a result of Levy's failure to utilize proper shoring as required by the contract. Defendant argues that the cave-in would not have occurred had proper shoring been utilized.

Young disagrees arguing first that it could not have anticipated the differing site conditions by interpreting the original contract documents. Young contends that if the original contract drawings had properly identified the storm drain line, it would have included additional costs in its contract bid. Regardless, Young argues that once the storm drain was discovered, given the specific site conditions, shoring was not a feasible solution to the problem.

In sum, the parties are in disagreement concerning when Young became aware of the storm drain line problem and, upon the storm drain's discovery, what action should have been taken by GSA, Young and Levy, what actions were in fact taken by GSA, Young and Levy, what additional costs were incurred as a result of the storm drain line, and who bears responsibility for the related cave-in at the excavation site. Disputed material facts exist concerning these issues which make summary judgment inappropriate.

■ Count I of Young's complaint also alleges a differing site condition related to defective specifications concerning the re-

turn air grille. The contract called for a furrout to enclose a return air duct. Young alleges that it was necessary to install a smaller return air grille than the grille called for in the original specification. Young contends that the contract specifications were defective because they did not indicate that the smaller air grille was required.

Defendant argues that the contract specifications were not defective and denies any responsibility for damages. Defendant alleges that Young failed to coordinate work between its two subcontractors Sedalco and Levy in order to insure that the duct would clear the furring around the column. Sedalco had been subcontracted for furring the column with sheet rock and Levy was subcontracted to install the return air duct and return air grille. Defendant alleges that had the proper coordination among Young, Levy and Sedalco taken place, the original larger return air grille would have been suitable.

However, Young contends that Levy and Sedalco proceeded with construction pursuant to the original specifications provided by GSA and that it was not until after the initial work had been completed that the problem arose. In short, Young argues that there was no way for Levy or Sedalco to determine that there was a problem (and thus a need to coordinate) until after the larger grille had already been installed. Once the defect was determined, Young contends, Levy formulated a means of correcting the problem in the least expensive and least time consuming manner. Defendant argues that Levy proceeded to order and install the smaller air grille without GSA's approval. Defendant contends that any such work conducted prior to required government approval is done at the contractors own risk and is not recoverable.

As concluded concerning the undisclosed storm drain, the site condition concerning the air grille presents additional genuine issues of material fact which are not resolvable by summary judgment, e.g., whether the original plans and specifications called for the larger or smaller air grille, whether Young and his subcontrac-

tors should have anticipated the problem, whether problems associated with the grille were caused by a lack of coordination among Young and his subcontractors, whether the problem resulted from defective specifications provided by GSA, and whether Young, Young's subcontractors and GSA acted responsibly in resolving the defect once it was detected. These unresolved issues, among others make summary judgment inappropriate at this juncture.

### B

■ Count II of Young's complaint seeks review of the contracting officer's decision denying Young's claim of government caused delay. Young seeks damages associated with delays allegedly caused by GSA's mismanagement of the overall project, which resulted in Young having to resequence work around the other contractors.

Defendant points out that the contract provided that Young would have full use of the site but not necessarily exclusive access. Defendant alleges that during the course of the contract, Young and its subcontractors failed to coordinate their work schedules with the other contractors working on the project. Defendant argues that it was Young's lack of coordination and not GSA's mismanagement that resulted in any delays.

In its motion for summary judgment, defendant argues that no part of the delay was caused by the government. Defendant's motion itemizes the delay in nine overlapping categories, including delay caused by (1) overlapping contracts, (2) issuance of the notice to proceed, (3) alleged site access unavailability, (4) asbestos removal, (5) lack of completion of exterior windows, (6) alleged differing site condition in the basement slab, (7) incompletion of the access floor, (8) incompletion of the roof and (9) GSA's alleged slow response to Young's submittals. For each of the delays, defendant argues that Young has failed to prove that any of the delay was caused by the government. Plaintiff need not prove at this time that the delays were

government caused. Plaintiff is only required to produce evidence illustrating that genuine issues of material fact exist. Plaintiff has easily met this burden.

Although the parties are in general agreement that a delay did occur, they disagree as to who caused it. For example, defendant argues that Young and not the government caused the delay related to the asbestos removal. In August 1987, GSA issued a change order directing Young to proceed with asbestos removal on the first floor. GSA directed Young to block off a restricted area so that employees would not become exposed to asbestos. Defendant alleges that Young could have worked on other areas that were not blocked, and therefore any delay was caused by Young. However, Young argues that it was attempting to sequence its work in the most efficient manner possible and that moving workmen in and out of areas as defendant suggests directly impacts efficiency and thus causes delay.

As a second example of disagreement, defendant argues that Young is not entitled to compensation for government delay caused by incompletion of the roof. However, Young contends that it was delayed because GSA failed to have the roof installed completely, allowing water to enter the building. Young maintains that this prevented Young from performance of certain tasks including installation and activation of major electrical systems.

Landmark Restoration Company, a separate contractor, was responsible for installing a new roof. Defendant argues, contrary to Young's assertions, that water seepage through the roof was caused by Young's own failure to coordinate with Landmark. Defendant alleges that after Landmark installed the new roof, Young cored penetrations in the roof for plumbing and electrical conduit but failed to coordinate with Landmark for the flashing of these roof penetrations. As a result, water came through the penetrations and caused damage.

Young denies the position of GSA. Young contends that the roof was to have been completed and in place prior to Young beginning work under its contract. Young argues that not only was the roof not complete when it began work, but there was a hole in the building extending from the basement to roof. Installation of the roof was critical to having a building free from water intrusion, says Young, and much of its work could not be performed until the roof was completely installed. Defendant responds by alleging that prior to the roof's completion, a plastic protective cover was placed over the open court area to protect against water intrusion. Defendant argues that the only water intrusion that was substantial enough to cause any damage occurred because of Young's failure to flash the roof penetrations it cored.

In response, Young argues that it was only responsible for installation of flashing around roof penetrations it cored and that it did in fact install flashing for all penetrations it cored as required by the contract. Young argues that Landmark actually cored most of the penetrations and it was Landmark's responsibility to flash the corings it made.

These two delay examples, one caused by asbestos removal and one caused by the roof incompletion, illustrate the numerous genuine issues of material fact that exist for each of the nine different categories of delay listed above. Similar unresolvable factual issues are present in connection with the other delay categories. For each delay category, each party makes plausible arguments that the other party is responsible for any delay. These conflicting arguments are not resolvable at this juncture and therefore summary judgment will not be granted for any of the delay claims.

C

Finally, regarding damages, defendant argues that claim preparation costs for Young and its subcontractors are not recoverable and that Young's use of the Eichleay formula under the facts of this case is inappropriate. Given our disposition of the liability issues raised by defendant's motion, we decline to address either of these two damages issues at this time. Young must establish liability before any

damages are recoverable. Therefore, we shall consider these damage issues along with all other merits issues at the trial of this matter.

## D

This case is highly fact-intensive. The contract-in-suit involved extensive renovations from the roof to the basement in a large postal building. An illustration of the complexity is furnished by the extensive length of defendant's motion for partial dismissal and summary judgment (53 pages, 45 of which were dedicated to defendant's argument concerning summary judgment) which required defendant to file a request to exceed page limitations pursuant to RUSCC 83.1(b), Defendant's Motion for Leave to File out of Time Request to Exceed Page Limitation, filed Apr. 16, 1992. The table of contents in defendant's motion shows that there are at least 16 different issues concerning summary judgment, *see* Defendant's Motion for Partial Dismissal, or, in the Alternative, Motion for Summary Judgment, Table of Contents, Argument, IV–XIX, filed Apr. 16, 1992; the accompanying appendix to defendant's motion consists of over 200 pages, *see* Appendix to Defendant's Motion for Partial Dismissal, or, in the Alternative, Motion for Summary Judgment, filed Apr. 16, 1992.

To summarize, although it is possible to phrase the liability issues presented in defendant's motion for summary judgment as issues of law, we simply require a more complete factual context to fairly evaluate the positions and arguments of the parties. Application of law to the factual circumstances of this case requires that the decision maker be thoroughly steeped in the factual context. This will require a trial.

## IV

## A

Based on the foregoing, defendant's motion for partial dismissal, filed April 27, 1992 is DENIED. In addition, defendant's motion for summary judgment on Counts I and II of the complaint is DENIED WITHOUT PREJUDICE.

## B

The parties shall file a joint status report not later than Tuesday, September 8, 1992 advising of (1) the most convenient location for trial, (2) the time which will be required for trial and (3) any other matters which the parties deem appropriate.

It is contemplated that precise dates for pre-trial conference and trial and for submission of memoranda of contentions and other items described in paragraphs 11 through 15 of Appendix G, RUSCC will be selected during an unrecorded telephone conference with counsel to be initiated by the court upon receipt of the joint status report designated in the preceding paragraph.