**Truman PETWAY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 92–104C.**

United States Court of Federal Claims.

July 30, 1993.

---

Timothy S. Fisher, Newport News, VA, for plaintiff.

William C. Peachey, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, David M. Cohen, and James M. Kinsella, for defendant. Lieutenant Colonel W. Gary Jewell and Captain Flora D. Darpino, Dept. of Army, of counsel.

## ORDER

TIDWELL, Judge:

This case is before the court on defendant's motion for summary judgment. For the reasons set forth below, the court grants defendant's motion.

### I. FACTS

Plaintiff entered the United States Army on October 3, 1968, and served continuously on active duty until February 15, 1986. On March 20, 1985, plaintiff participated in a random unit urinalysis screening. On March 21, 1985, the custody officer discovered that plaintiff's specimen bottle was not sealed according to Army regulations. Specifically, the seal plaintiff placed over the top of the bottle touched the identification label on the side of the bottle. Consequently, the custody officer ordered plain-

tiff to remove the old seal and place a new seal on the bottle. Plaintiff then properly resealed the bottle in front of the custody officer.

Plaintiff's urine specimen tested positive for tetrahydrocannabinol (THC) on April 11, 1985, indicating plaintiff had recently used marijuana or a similar substance. As a result, on May 31, 1985, plaintiff's company commander, Captain Stormer, referred plaintiff to the Alcohol and Drug Abuse Prevention and Control Program (ADAPCP) and ordered a second urinalysis. That same day, plaintiff submitted a second urine specimen and enrolled in the ADAPCP. The second specimen also tested positive for THC. While enrolled in the ADAPCP, plaintiff submitted three additional urine samples that tested positive for THC (twice in June and once in August).

On June 28, 1985, plaintiff's battalion commander offered plaintiff an Article 15[1] for using marijuana in violation of Article 112a of the Uniform Code of Military Justice. 10 U.S.C.A. § 912a (West Supp.1984). Plaintiff waived his right to a court martial and accepted the Article 15. The resulting punishment, which was suspended, was a reduction in one grade from E6 to E5. Plaintiff appealed the grade reduction to his brigade commander who denied the appeal on July 20, 1985.

On August 5, 1985, Captain Stormer advised plaintiff that he was being recommended for separation under Army Regulation (AR) 635–200, Chapter 14.[2] This recommendation was based upon the finding of THC in the urine sample submitted on March 20, 1985. On August 6, 1985, plaintiff requested a separation board to consider his case. The four member separation board convened on December 2, 1985. One of the members was Captain James P. Monagle who allegedly became plaintiff's company commander at some point after the

administrative hearing but before plaintiff's discharge.

At the hearing, Captain Stormer testified that plaintiff had been given every opportunity at rehabilitation, but that he continued to abuse drugs. Confirming Captain Stormer's testimony, the clinical director for the local rehabilitation program testified that plaintiff lacked the proper motivation, was still in denial, and therefore had a poor prognosis for rehabilitation. Additionally, sworn statements by two other counselors who worked with plaintiff substantiated the director's testimony. Further, plaintiff testified: "After I was identified through the unit sweep I continued to use [marijuana] even though I was aware of the consequences." Plaintiff also admitted using marijuana "one time" between May 31, 1985 and August 16, 1985, while enrolled in the ADAPCP.

On December 4, 1985, the Board found that plaintiff: (1) abused marijuana between March to August 1985; (2) abused drugs more than once while enrolled in the ADAPCP; (3) showed little interest in being rehabilitated while enrolled in the rehabilitation program; and (4) should not be retained because retention would contradict the good order and discipline of the Army. The Board then recommended that plaintiff be separated from the Army with an honorable discharge. The separating authority accepted the Board's recommendation on January 31, 1985, and plaintiff was honorably discharged on February 15, 1985.

In February 1986, plaintiff petitioned the Army Board for Correction of Military Records (ABCMR) requesting removal of the Article 15 proceeding from his records and restoration of all entitlements denied by that action. Plaintiff's request was based upon the theory that the March 20, 1985 urine sample constituted invalid evidence, since the sample had to be resealed. On

---

**1.** An Article 15 is a proceeding where local commanders can exercise judicial punishment for infractions of the Uniform Code of Military Justice and bypass the formalities and severe punishments of a court martial. The soldier has the option of either accepting an Article 15 or requesting a court martial. Even if a soldier accepts an Article 15, the soldier may appeal to the next officer in the chain of command. 10 U.S.C. § 815 (1988).

**2.** Chapter 14 mandates that first-time drug offenders, grades E5–E9, be processed for elimination. AR 635–200, ch. 14, § III, para. 14–12d(1) (1984).

July 6, 1988, the ABCMR reviewed the record and determined that plaintiff's evidence was insufficient to overturn the findings of either the Article 15 proceeding or the separation board.

Plaintiff filed suit in this court on February 12, 1992. In his complaint, plaintiff claimed that: (1) the March 20, 1985 urine sample was mishandled in violation of Army regulations and was therefore, improper evidence of drug abuse; (2) Captain Monagle was a biased member of plaintiff's separation board in violation of AR 635–200, ch. 2, § III, para. 2–7b (1984);[3] and (3) mandatory processing for separation, under AR 635–200, ch. 14, § III, para. 14–12d(1) (1984), deprived plaintiff of his constitutional right to due process. Plaintiff did not present claims two and three to the ABCMR. As a result, defendant moved for, and was granted, a stay so the ABCMR could review these new claims.

During the ABCMR's reconsideration, the government presented a declaration written by Captain Monagle. The declaration stated that Captain Monagle was unaware of his future position during any of the proceedings. Additionally, Captain Monagle's declaration presented specific reasons why he recommended plaintiff's separation. Plaintiff submitted evidence into the record which indicated that Captain Monagle may have been plaintiff's company commander at the time of his separation. On March 24, 1993, the ABCMR determined that there was insufficient proof of bias to overturn the separation board's findings. In its motion in summary judgment, defendant argued that the ABCMR's findings on plaintiff's claims were not arbitrary, capricious, or contrary to law or regulation.

## II.  DISCUSSION

■ Summary judgment is appropriate when there is no genuine issue as to any material fact and "the moving party is entitled to a judgment as a matter of law." RCFC 56(c). A fact becomes material

when it "could make a difference in the outcome of a case." *Young Enterprises, Inc. v. United States*, 26 Cl.Ct. 858, 863 (1992) (citations omitted). In order to show that a material fact is genuinely at issue, the non-movant must introduce more than "some" evidence on the disputed issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Chevron U.S.A., Inc. v. United States*, 17 Cl.Ct. 537, 540 (1989), *rev'd on other grounds*, 923 F.2d 830 (Fed. Cir.1991). As the Supreme Court stated, "[t]here is no issue for trial unless there is sufficient evidence favoring the non[-]moving party for a [court] to return a verdict for that party. If the evidence [of the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). "[When] the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ ABCMR decisions are binding on the plaintiff unless he can show by "cogent and clearly convincing evidence" that the board's decision was "arbitrary, capricious, contrary to law or unsupported by substantial evidence." *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983); *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 811 (1979); *Dorl v. United States*, 200 Ct.Cl. 626, 633, 1973 WL 21334 *cert. denied*, 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973); *Wyatt v. United States*, 23 Cl.Ct. 314, 318–19 (1991); *Anderson v. United States*, 22 Cl.Ct. 178, 182–83 (1990).

### A.  *Plaintiff's Urine Sample Was Reliable.*

■ Plaintiff claimed that the March 20, 1985 urine specimen was not main-

---

3. The board should be composed of unbiased officers and no member can be either the officer initiating the action, or any officer with direct knowledge of the case. AR 635–200, ch. 2, § III, para. 2–7b (1984).

tained according to Army regulation AR 600–85, ch. 3, § IV, para. 3–18b(2) (1981). As such, plaintiff claimed the specimen should not have been considered in the Article 15 proceedings. However, deviation from regulations regarding chain of custody does not automatically render a urine sample inadmissible, but merely weighs against the reliability of the specimen. *See United States v. Pollard*, 27 M.J. 376, 377 (C.M.A.1989) (citing *United States v. Caceres*, 440 U.S. 741, 755–757, 99 S.Ct. 1465, 1473–74, 59 L.Ed.2d 733 (1979)). The test is whether the finder of fact "can reasonably decide whether a urine sample originated from [plaintiff] and was tested without adulteration by any intervening agent or cause." *Pollard*, 27 M.J. at 377. Nothing in the record indicates that plaintiff's specimen was ever outside the chain of custody. Because plaintiff's urine sample was sealed, and then resealed by plaintiff in front of the custody officer, it was reasonable for the ABCMR to consider that plaintiff's March 20 urine sample was reliable. Accordingly, the court holds that the ABCMR was not arbitrary or capricious in upholding the Article 15.

## B.  Plaintiff Did Not Show Bias.

Army rules state that, "[c]are will be exercised to insure that ... [t]he board is composed of experienced, unbiased officers." AR 635–200, ch. 2, § III, para. 2–7b(1). Plaintiff claimed that Captain Monagle was on orders to become his company commander at the time of his hearing before the board. Plaintiff further alleged that Captain Monagle knew he was to become plaintiff's commander at that time. Plaintiff argued that this knowledge translates into sufficient bias to render the Board's findings void. At the ABCMR review, plaintiff did not submit any evidence indicating when Captain Monagle was on orders to take command or even when he actually took command. Captain Monagle testified, by declaration, that he was only among a pool of officers eligible for command and unaware that he would be plaintiff's commander at the time of the separation board. Additionally, Captain Monagle stated that he was not biased, citing specif-

ic reasons why he recommended plaintiff's discharge.

Plaintiff offered no evidence to support his claim, and thus failed to meet his burden to provide the court with the cogent and convincing evidence required to overcome the Board's finding. *See Cooper v. United States*, 203 Ct.Cl. 300, 304, 1973 WL 21358 (1973). Because plaintiff failed to submit any contradictory evidence to Captain Monagle's declaration, plaintiff failed to overcome the strong presumption that military administrators "discharge their duties correctly, lawfully, and in good faith." *Sanders v. United States*, 219 Ct. Cl. 285, 594 F.2d 804, 813 (1979). Therefore the court finds that it was reasonable for the ABCMR to find that there was insufficient evidence to indicate that Captain Monagle was biased in violation of AR 635–200, ch. 2, § III, para. 2–7b(1).

## C.  This Court Lacks Jurisdiction Over Due Process Claims.

Plaintiff's last claim is that AR 635–200, ch. 14, § III, para. 14–12d(1) (1984), violates his rights under the Due Process Clause of the Fifth Amendment. Plaintiff states that because he was mandatorily processed for separation, the board was denied discretion to consider retention. Because the Due Process Clause "does not in itself obligate the federal government to pay money damages", this court lacks the jurisdiction to rule on this cause of action. *Walton v. United States*, 213 Ct.Cl. 755, 757, 1977 WL 9601 (1977) (citing *Muehlen v. United States*, 209 Ct.Cl. 690, 529 F.2d 533 (1976)).

## III.  CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgment. Specifically, this court finds that there was sufficient evidence to support the ABCMR's findings and that the Board's decision to separate plaintiff was not arbitrary, capricious, contrary to law or regulation, or unsupported by substantial

716

evidence. The Clerk of the Court is directed to dismiss the complaint. No costs.

IT IS SO ORDERED.