IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 30, 2008

Charles R. Fulbruge III
Clerk

No. 07-30173

ROYNELL J. WILLIAMS,

Plaintiff - Appellant,

v.

MICHAEL W. WYNNE, Secretary of the United States Air Force,

Defendant - Appellee.

Appeal from the United States District Court for the
Eastern District of Louisiana

Before GARZA, STEWART, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff-appellant Roynell Williams occupied a dual status position with the United States Air Force, working both as an Aircraft Electrician, in a civilian capacity, and serving as a member of the Air Force Reserves. After testing positive for cocaine use while on active reserve status, the appellant was discharged from the reserves and then removed from his civilian position. In this action, the appellant challenges his removal from his civilian position and discharge from his military status. He also asserts a claim for employment discrimination under Title VII. The district court dismissed the Title VII claim for lack of subject matter jurisdiction and granted summary judgment for the defendant-appellee Michael W. Wynne, Secretary of the United States Air Force

("Air Force"),[1] on the remaining claims.  Williams appeals.  For the reasons that follow, we AFFIRM the judgment of the district court.

I

The appellant held a dual status position with the Air Force for many years.  In his civilian capacity, he was an Aircraft Electrician; in his military capacity, he was an Air Reserve Technician ("ART").  In January 1997, while the appellant was on active status with the reserves, the appellant provided a urine sample that tested positive for cocaine.  In separate proceedings, the plaintiff was discharged from both his civilian position and his military position for drug use.

The appellant challenged his removal from his civilian position and his discharge from his military position.  He appealed his discharge from the Reserves to the Air Force Board for the Correction of Military Records ("AFBCMR").  He appealed his removal from his civilian position to the Merits System Protection Board ("MSPB").  Before the MSPB, the appellant also asserted that he was terminated in retaliation for filing a prior Equal Employment Opportunity Commission ("EEOC") complaint.  The MSPB denied the appellant's retaliation claim, as well as his challenge to the merits of the removal decision, and the EEOC affirmed.  The AFBCMR likewise rejected the appellant's objections to his removal from the Reserves and affirmed his discharge.

The appellant then brought this action challenging the removal decisions of the AFBCMR and the MSPB and further alleging that his removal from his

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c), Secretary Wynne was automatically substituted for former Secretary of the Air Force F. Whitten Peters, who originally was the named party.

civilian position was discriminatory and in violation of Title VII, 42 U.S.C. § 2000e-5.

In December 2002, the Air Force filed an administrative record with the district court. That record contained a previously undisclosed letter. The letter explained that an expert witness in the appellant's administrative discharge hearing, who provided evidence regarding the laboratory procedures used in the case, had been removed prior to the hearing from his position as chief of the forensic sciences branch at the Air Force base's drug laboratory. Based on this new evidence, and its potential value for impeachment, the appellant filed a request for reconsideration with the AFBCMR. The AFBCMR denied the request. The appellant challenges this decision as well.

The district court dismissed the appellant's Title VII claim for lack of subject matter jurisdiction and granted summary judgment to the Air Force on the remaining claims. This appeal followed.

II

We review dismissals for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) de novo. Dawson Farms, LLC v. Farm Serv. Agency, 504 F.3d 592, 601 (5th Cir. 2007).[2]

We review a district court's decision to grant summary judgment de novo as well. Stotter v. Univ. of Tex. at San Antonio, 508 F.3d 812, 820 (5th Cir.

---

[2] The district court applied the standard of Rule 12(b)(1) to the appellant's Title VII claim, which while similar to the standard of Rule 12(b)(6), permits the court to consider a broader range of materials in resolving the motion. See Clark v. Tarrant County, 798 F.2d 736, 741 (5th Cir. 1986) (stating that a court may dismiss for lack of subject matter jurisdiction based on either "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."). A recent decision of our court pondered, but did not resolve, whether the standard for Rule 12(b)(1) or 12(b)(6) applies on a motion to dismiss Title VII claims brought by dual status military personnel. See Walch v. Adjutant Gen.'s Dep't of Tex., __ F.3d __, 2008 WL 2512956, at *__ (5th Cir. June 24, 2008). Because the parties do not raise any issue with respect to the standard the district court used in this case, we do not resolve this issue.

2007). Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). On a motion for summary judgment, we view the facts, and all reasonable inferences drawn from those facts, in the light most favorable to the non-moving party. Stotter, 508 F.3d at 820.

### III

Relying on this court's decision in Brown v. United States, 227 F.3d 295 (5th Cir. 2000), the district court concluded that because the appellant's Title VII claim arose from the appellant's military status, it was not cognizable; the district court therefore dismissed the claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The appellant argues that (a) Brown is distinguishable and, (b) in any event, the claim did not arise from his military status. The Air Force disagrees and further contends that the appellant waived his Title VII claim by failing to include that claim in the amended complaint that was filed after the Title VII claim was dismissed.

We first reject the Air Force's contention that the appellant waived his Title VII claim by failing to include it in his amended complaint after that claim was dismissed by the district court. "[A] plaintiff, by filing an amended complaint after a dismissal with leave to amend, [is] not barred from raising on appeal the correctness of the dismissal order." Wilson v. First Houston Inv. Corp., 566 F.2d 1235, 1238 (5th Cir. 1978), vacated on other grounds, 44 U.S. 959 (1979). Applying this rule, the appellant did not waive his Title VII claim by filing an amended complaint that failed to replead the claim already rejected by the district court.

The next question is whether the district court correctly concluded that it lacked subject matter jurisdiction under Brown to consider the appellant's Title

VII claim. In Brown, this court considered whether a dual status Air Force Reserve Technician could bring a claim against the Air Force for employment discrimination under Title VII. 227 F.3d at 297. Title VII waives federal sovereign immunity as to the Air Force and all other "military departments," see 29 C.F.R. § 1614.103(d)(1), but in Brown the court explained that "this waiver has been understood to apply only to suits by civilian employees of the military departments, and not members of the armed forces." 227 F.3d at 298. Addressing the problem of the dual status employee, the court stated that "employment discrimination claims by ARTs must be categorized as either arising from their position as a civilian employee of a military department, or their position as a uniformed service member." Id. at 299. "[C]laims arising purely from an ARTs civilian position are provided for under Title VII; claims that originate from an ARTs military status, however, are not cognizable" under Title VII. Id. The district court concluded that the appellant's claim arose from his military status and thus was not cognizable.

The appellant argues that the district court's reliance on Brown was misplaced. The appellant attempts to distinguish Brown, relying on a case from the Federal Circuit, Jentoft v. United States, 450 F.3d 1342 (Fed. Cir. 2006). Jentoft addressed the problem of the dual status employee in the context of the Equal Pay Act, 29 U.S.C. § 206. Id. at 1343. There, the court rejected the distinction between non-military and military status to determine the right of dual status employees to bring Equal Pay Act claims. Id. at 1349. The court's decision rested in part on 10 U.S.C. § 10216(a), a statute not cited in Brown.

The current version of § 10216(a) provides that "[f]or purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee . . . ." (emphasis added). Id. at 1348–49. Because the court found "no language in § 10216(a) limiting the circumstances in which a dual status technician can be considered a federal civilian employee," the

Federal Circuit concluded that a dual status employee, as defined in § 10216(a), could bring a claim under the Equal Pay Act. Id. at 1348. Jentoft distinguished Brown by noting that Brown did not cite § 10216(a). Id. at 1349.

Relying on Jentoft, the plaintiff argues that Brown should be limited to cases involving employment actions taken against dual status employees that occurred prior to the 1996 enactment of § 10216(a) as part of the National Defense Authorization Act for Fiscal Year 1997, Pub. L. No. 104-201, § 1214(1)–(2), 110 Stat. 2422, 2695 (1996).[3] The Government responds that Jentoft is distinguishable because it dealt with the Equal Pay Act and not Title VII. The Government points out that Brown relied on the definition of "military departments," not at issue in the Equal Pay Act context, to determine the scope of Title VII's coverage and to conclude that Title VII did not extend to uniformed members of the military.

---

[3] The original definition of "military technicians" in § 10216(a), enacted in 1996, provided:

> IN GENERAL.–Military technicians are Federal civilian employees hired under title 5 and title 32 who are required to maintain dual-status as drilling reserve component members as a condition of their Federal civilian employment. Such employees shall be authorized and accounted for as a separate category of dual-status civilian employees, exempt as specified in subsection (b)(3) from any general or regulatory requirement for adjustments in Department of Defense civilian personnel.

The specific language relied on by the Federal Circuit in Jentoft, stating that "[f]or purposes of this section and any other provision of law, a military technician (dual status) is a Federal civilian employee," was not added until November 18, 1997. See National Defense Authorization Act for Fiscal Year 1998, Pub. L. No. 105-85, § 522(a), 111 Stat. 1629, 1734 (1997). That specific, relevant language has remained unchanged since 1997, although surrounding language of the statute has been amended.

The appellant has directed us to both versions of § 10216(a). The appellant does not argue that a particular version of the statute is applicable. The appellant does argue that the 1997 version of the statute, relied on by Jentoft, clarified the intent of the statute. In light of this argument and the fact that the current version of the statute is in relevant respects identical to the 1997 version of the statute, we assume arguendo that the language in the current version of the statute applies.

The rule articulated in Brown applies, notwithstanding the statement in § 10216(a) that "a military technician (dual status) is a Federal civilian employee." That provision also provides that a military technician "is required as a condition of that employment [( i.e., the civilian employment)] to maintain membership in the Selected Reserve . . . ." § 10216(a)(1)(B) (emphasis added). Consistent with this provision, Brown recognized that "ARTs, such as Brown, are civilian employees whose positions require that they also serve in the military reserves." 227 F.3d at 297 (emphasis added). The court concluded that these civilian employees could not bring Title VII claims arising from events related to their military reserve status, a necessary condition of their civilian employment.

As we explained in Brown, Title VII claims arising from an ARTs military status constitute an impermissible "intrusion into military personnel decisions." 227 F.3d at 299. Nothing in the legislative history of § 10216(a)(1)(B) suggests that Congress intended to intrude on such military personnel decisions. Adopting the rule implied by appellant's distinction would create an absolute right of ARTs, as dual status employees, to assert Title VII claims against the Air Force, even for claims arising from events falling wholly within "the military sphere." Section 10216(a) does not countenance this result, and based on Brown we reject it.

One of our recent decisions confirms this result. In Walch v. Adjutant Gen.'s Dep't of Tex., we considered whether the appellant, a dual status employee who split his time as a full-time National Guard civilian employee and a member of the Texas Air National Guard could bring a Title VII claim against the State of Texas, Texas's military departments, or the Air Force. __ F.3d __, 2008 WL 2512956, at *__ (5th Cir. June 24, 2008). Relying primarily on Brown and the

Supreme Court's decision in Feres v. United States, 340 U.S. 135 (1950),[4] we affirmed the district court's dismissal of the appellant's Title VII claims as non-justiciable. Walch, 2008 WL 2512956, at *__. According to Walch,

> a court may not reconsider what a claimant's superiors did in the name of personnel management—demotions, determining performance level, reassignments to different jobs—because such decisions are integral to the military structure. Some of those decisions might on occasion be infected with the kinds of discrimination that Title VII generally seeks to correct, but in the military context the disruption of judicially examining each claim in each case has been held to undermine other important concerns.

Id. at *__ (emphasis added). Walch confirms that the rule from Brown remains applicable. See id. at *__ (distinguishing Jentoft and reaffirming the rule of Brown). The district court was correct to apply Brown in this case.

The appellant further argues that even if Brown does apply, his claim does not arise from his military status. The appellant argues that he brings this claim in his civilian capacity. He argues that there was no "military nexus" shown because there was no evidence that he ingested the drugs while on military status. The Government argues that the claim arises from his military status because the drug test was administered while the appellant was on active reserve status.

The district court adopted the Government's position, adding that the military discharge proceedings were initiated prior to the civilian employment removal proceedings; the court further correctly noted that for the appellant to maintain his civilian position, he had to maintain his military position. For

---

[4] Feres held that the United States "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146. However, Feres has been understood more broadly as generally disfavoring judicial review of military decisions. See Walch, 2008 WL 2512956, at *__ ("The Feres doctrine was premised on the disruptive nature of judicial second-guessing of military decisions.").

these reasons, the district court concluded that the claim arose from the appellant's military status.

The district court committed no error in finding that the appellant's claim arose from his military status. As we stated in Brown, "[w]hile these actions had a civilian component, in that his discharge made him ineligible for his civilian position, they nonetheless were actions taken within the military sphere." 227 F.3d at 299. Regardless of whether the appellant ingested the drugs while on military status, he tested positive for cocaine use while on military status and the decision to discharge him as a result was therefore a military personnel management decision, which was integral to the military structure and which we will not second guess. See, e.g., Walch, 2008 WL 2512956, at *__ (considering various Title VII claims by a dual status employee and rejecting those claims as integrally related to military personnel management decisions).

Based on the facts of this case, we hold that the district court did not err in applying Brown to dismiss the appellant's Title VII claim.

IV

The appellant next argues that the decision of the AFBCMR was arbitrary, capricious, or not supported by substantial evidence and therefore violated the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.

Final decisions made by boards for the correction of military records, such as the AFBCMR, are subject to judicial review under the APA and can be set aside if they are arbitrary, capricious, or not supported by substantial evidence. See Chappell v. Wallace, 462 U.S. 296, 303 (1983). Under 10 U.S.C. § 1552(a)(1), the Secretary of the Air Force, acting through the AFBCMR, "may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice." (emphasis added). In light of this language, the review of military board judgments is "exceptionally deferential." Viles v. Ball, 872 F.2d

9

491, 495 (D.C. Cir. 1989); see also Kreis v. Secretary of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989). "All that is required is that the Board's decision minimally contain a rational connection between the facts found and the choice made." Frizelle v. Slater, 111 F.3d 172, 176–77 (D.C. Cir. 1997) (quotation marks omitted). "The plaintiff bears the burden of establishing by 'cogent and clearly convincing evidence' that the decision of the board was the result of a material legal error or injustice." Calloway v. Brownlee, 366 F. Supp. 2d 43, 54 (D.D.C. 2005) (quoting Muse v. United States, 21 Cl. Ct. 592, 602 (Cl. Ct. 1990)).

## A

The appellant argues, as he did to the AFBCMR and the district court, that he received ineffective assistance of counsel at his hearing before the administrative discharge board. The AFBCMR rejected this claim for two reasons.[5] First, the AFBCMR noted that the Sixth Amendment right to effective assistance of counsel is a criminal concept with no relevance to administrative or civil proceedings. This observation was correct; the Sixth Amendment right to effective assistance of counsel did not apply to the appellant's non-criminal, administrative discharge hearing. See Mantell v. Dept. of Justice, I.N.S., 798 F.2d 124, 127 (5th Cir. 1986); Sanchez v. United States Postal Service, 785 F.2d 1236, 1237 (5th Cir. 1986).[6]

---

[5] The AFBCMR agreed with and adopted the advisory opinion prepared by Lt. Col. P. Christopher Clark of the Air Force, which we thus review as the AFBCMR's decision in this case.

[6] The appellant claims a right to the appointment of qualified counsel in his administrative discharge hearing under Article 27(b) of the Uniform Code of Military Justice. See Strickland v. United States, 69 Fed. Cl. 684, 691 n.6 (Fed. Cl. 2006). This right, however, is not clear; the appellant relies on a case from the Court of Federal Claims for this proposition, but that case—Strickland—cited to a statute regarding the appointment of counsel for a court martial (not an administrative discharge hearing), 10 U.S.C. § 827(b), and a regulation issued by the Secretary of the Navy (not the Air Force). However, the Notification of Initiation of Separation Action issued to the appellant suggests that the Air Force also provides qualified

Second, the AFBCMR concluded that even assuming the Sixth Amendment did apply, the appellant failed to establish ineffective assistance. Under Strickland v. Washington, 466 U.S. 668, 687–96 (1984), cited by the AFBCMR, the appellant had the burden of demonstrating that (1) counsel's performance fell below an objective standard of reasonableness and that (2) but for counsel's deficient performance, the result of the proceeding would have been different. The AFBCMR concluded that the appellant failed to meet the first prong of the test for each of his ineffective assistance claims. The appellant points to no evidence establishing an objective standard of reasonableness that applies in this case. Further, the appellant offers only conclusory allegations of prejudice. After a careful review of the record, we find that all the AFBCMR's reasons for rejecting the appellant's individual ineffective assistance claims at least minimally contain a rational connection between the facts found and the choice made. See Frizelle, 111 F.3d at 176–77. Therefore, the AFBCMR's determination that the appellant did not receive ineffective assistance was not arbitrary, capricious, or contrary to substantial evidence.

## B

The appellant argues that a gap in the chain of custody of the urine sample used for his drug test rendered that evidence inadmissible. See United States v. Nault, 4 M.J. 318, 320 (C.M.A. 1978) (holding that the United States Army Court of Military Review erred in admitting a pill and a lab report identifying the pill as LSD where an "essential link" of the "custodial chain" was

---

counsel in discharge proceedings. This court has distinguished in other contexts between the right to competent (or qualified) counsel and the right to effective assistance of counsel under the Sixth Amendment. See Elizalde v. Dretke, 362 F.3d 323, 330 (5th Cir. 2004) (noting this distinction in the state habeas context). The right to have qualified counsel appointed does not necessarily created a coordinate right to effective assistance of counsel under the Sixth Amendment.

missing). The AFBCMR rejected this claim for two reasons. First, the AFBCMR rejected the appellant's reliance on court-martial cases to establish the applicable evidentiary rule. According to the AFBCMR, all matters relevant to an issue are admissible at a discharge board hearing, and the rules governing court-martial cases do not necessarily apply. Second, the AFBCMR concluded that a break in the chain of custody would not necessarily render that evidence inadmissible; instead the nature of the break in the chain of custody would impact the weight of the evidence, not its admissibility.

The AFBCMR's decision that the urine sample was admissible was not arbitrary or capricious. As the Court of Military Appeals explained in United States v. Pollard:

> We hold that deviating from a regulation or instruction which sets out procedures for collecting, transmitting, or testing urine samples does not render a sample inadmissible as a matter of law; however, such deviation may be considered along with all other factors in determining if the evidence lacks sufficient reliability to be considered by the finders of fact.

27 M.J. 376, 377 (C.M.A. 1989); see also United States v. Maxwell, 38 M.J. 148, 152 (C.M.A. 1993) ("Any deficiencies in [the] chain [of custody] 'go to the weight of the evidence rather than its admissibility.'"). The ultimate test for admitting a urine sample into evidence is "whether a urine sample originated from [the plaintiff] and was tested without adulteration by any intervening agent or cause." Petway v. United States, 28 Fed. Cl. 711, 715 (Fed. Cl. 1993) (quoting Pollard, 27 M.J. at 377).

Here, the appellant complains of a short break in custody between the time the sample was delivered to the post office and the time the laboratory received the sample. Acknowledging that the chain of custody is not broken while the sample moves through the postal system, the appellant complains that there was no log entry for the post office's receipt of the sample. However, balanced against this minor custody gap was the fact that the sample arrived at

the lab with the seal unbroken. Under these circumstances, the AFBCMR's determination that the evidence was admissible was not arbitrary, capricious, or contrary to substantial evidence.

C

The appellant next argues that the administrative board failed to consider his potential for rehabilitation as required by 32 C.F.R. Part 41, App. A, Part 2 § (A)(2)(b). That provision, which was then applicable, provided that "unless separation is mandatory, the potential for rehabilitation and further useful service shall be considered by the Separation Authority."[7] The AFBCMR rejected the appellant's contention that the board failed to consider rehabilitation for two reasons.

First, the AFBCMR concluded that separation in this case was mandatory under Air Force Instruction ("AFI") 36-3209, which states at paragraph 3.25.1 that members discharged for drug abuse are not eligible for Probation and Rehabilitation (P&R) consideration.[8] The appellant contends that this provision applies only in a post-discharge scenario and only to the "discharge authority," an entity he contends—without further elaboration—is distinct from the discharge board. Because this paragraph applies only after a discharge decision has been made, the appellant argues that this provision is irrelevant in determining the threshold question of whether discharge is appropriate, a

---

[7] This regulation no longer appears in the Code of Federal Regulations. See Enlisted Administrative Separations, 63 Fed. R. 56,081-01 (Oct. 21, 1998) ("[32 C.F.R. Part 41] has served the purpose for which it was intended in the C.F.R. and is no longer necessary.").

[8] For this reason, the AFBCMR distinguished the case of Poole v. Rourke, 779 F. Supp. 1546, 1564–65 (E.D. Cal. 1991), on which the appellant relies. In Poole, the court concluded that the Air Force administrative discharge board erred by failing to take into account a one-time marijuana user's potential for rehabilitation. However, the AFBCMR claims that the regulation at issue in that case, AFR 39-10, authorized P&R for persons discharged for drug abuse, in contrast to this case. The appellant replies simply that Poole v. Rourke "remains good law." The appellant's conclusory reply is not persuasive.

question that requires the consideration of rehabilitation under 32 C.F.R. Part 41, App. A, "unless separation is mandatory."

We decline to resolve whether the AFBCMR was correct in concluding that separation was mandatory in this case because we conclude that the AFBCMR's second reason for rejecting appellant's argument was not arbitrary, capricious, or contrary to substantial evidence. The AFBCMR reasoned that the board did consider specific retention factors, which necessarily incorporated the potential for rehabilitation and further useful service. We discuss the AFBCMR's consideration of the retention issue below. However, the AFBCMR's determination that the board sufficiently considered the appellant's potential for rehabilitation was reasonable. The appellant thus cannot sustain his burden of showing by cogent and clearly convincing evidence that any failure to expressly consider specific rehabilitation factors resulted in material legal error or injustice.

D

The appellant next argues that the administrative board failed to consider the requisite "retention" factors then promulgated by the Secretary of Defense under 32 C.F.R. § 41, App. A, Part 2 § (A)(2)(d). Under this regulation, the board must consider six criteria for determining whether a member should be retained despite the events or conduct forming the basis for the separation proceeding.[9]

---

[9] These six retention criteria are:

(1) The seriousness of the circumstances forming the basis for initiation of separation proceedings, and the effect of the member's continued retention on military discipline, good order, and morale.
(2) The likelihood of continuation or recurrence of the circumstances forming the basis for initiation of separation proceedings.
(3) The likelihood that the member will be a disruptive or undesirable influence in present or future duty assignments.
(4) The ability of the member to perform duties effectively in the present and in the future, including potential for advancement or leadership.

As the AFBCMR noted, the board did consider specific retention factors, outlined in Air Force Instruction 36-3209, paragraph 4.14.4, specifically to be applied in drug cases.[10]

These two sets of criteria are similar. The appellant argues that the criteria are inconsistent and that the Secretary of Defense's criteria should control. However, the Air Force's criteria can be viewed rationally as a specific implementation of the Secretary of Defense's more general criteria. Because the board sufficiently considered retention using the Air Force's criteria, the AFBCMR's affirmance of the board's use of the retention criteria articulated in AFI 36-3209 was not arbitrary or capricious.[11]

E

---

(5) The member's rehabilitative potential.
(6) The member's entire military record.

[10] AFI 36-3209, paragraph 4.14.4 states that a member found to have abused drugs will be discharged unless all of the following criteria are met:

(1) Drug abuse is a departure from the member's usual and customary behavior; and
(2) Drug abuse occurred as a result of drug experimentation; and
(3) Drug abuse does not involve recurring incidents, other than drug experimentation; and
(4) The member does not desire to engage in or intend to engage in drug abuse in the future; and
(5) Drug abuse under all circumstances is not likely to recur; and
(6) Under the particular circumstances of the case, the member's continued presence in the Air Force Reserve is consistent with the interest of the Air Force in maintaining proper discipline, good order, leadership, and morale; and
(7) Drug abuse did not involve drug distribution.

[11] Several of the Air Force's criteria focus on the likelihood of recurrence of the drug abuse. The potential for rehabilitation rationally could be considered along with the likelihood of recurrence.

Finally, the appellant asserts a due process violation under the Fifth Amendment. This due process violation contains two parts. The first part is based on the appellant's allegations of deficiencies in the administrative discharge hearing, which already have been considered and rejected above. The second alleged due process violation is based on the non-disclosure of a letter memorandum revealing that the Air Force's expert witness on laboratory procedures, Dr. Papa, had been removed from his post as a laboratory supervisor because of poor forensic practices in the lab, which resulted in a false positive drug test in an unrelated case. That lab was the same lab that tested the appellant's urine sample.

This letter predated the appellant's discharge proceedings. Nonetheless, the appellant did not discover this letter until after the Air Force produced the administrative record to the district court for the purposes of this action. After learning of the letter, the appellant asked the AFBCMR to reconsider its prior decision in light of the new evidence. He argued that the letter constituted critical impeachment evidence as to the expert witness and a potential avenue for exploring the accuracy of the lab results; thus, the letter should have been disclosed to him. The appellant argued that the failure to disclose the letter constituted a due process violation, relying on Brady v. Maryland, 373 U.S. 83, 87 (1963) and Greene v. McElroy, 360 U.S. 474, 496 (1959), among other cases.

The AFBCMR reasonably concluded that the discovery requirements of Brady did not apply to the appellant's non-criminal, administrative discharge hearing. See, e.g., Weaver v. United States, 46 Fed. Cl. 69, 78 (Fed. Cl. 2000) ("[A]dministrative discharge hearings are not criminal procedures and, therefore, do not give rise to the Brady rule requirements of disclosure."). Nonetheless, the AFBCMR acknowledged that discovery must be granted if the failure to provide discovery is so prejudicial that it constitutes a denial of due process.

For several reasons, the AFBCMR concluded that the failure to disclose the letter was not sufficiently prejudicial to constitute a due process violation and that there was no material legal error or injustice warranting reversal of the administrative board's decision. First, the AFBCMR—adopting the rationale of the chief of the administrative law division of the Air Force Judge Advocate General—noted that a thorough review of the lab's testing procedures was conducted in the wake of the unrelated false positive report, and the findings of the investigation concluded that the false positive was an isolated event. Second, the AFBCMR reasoned that while the letter may have impugned Dr. Papa's credentials as a lab supervisor, it did not impugn his forensic toxicology expertise. Third, the AFBCMR noted that the appellant's primary defense was a "good soldier" defense, for which the letter would have served no useful purpose. Moreover, the value of the letter to other potential defenses was questionable. The letter involved lab procedures and thus was not relevant to the chain of custody issue that the appellant raised. Also, the appellant produced no evidence to refute the conclusion that the single, unrelated false positive was an isolated event and produced no evidence that his own test results were incorrect.

Applying the heightened deferential review that applies to military boards, the AFBCMR's reason for concluding that no due process violation occurred cannot be deemed arbitrary, capricious, or contrary to substantial evidence.

V

Finally, the appellant challenges the decision of the Merits Systems Protection Board, which affirmed his removal from his civilian position as an ART.

This court reviews non-discrimination claims presented to the MSPB based on the administrative record "and will uphold the Merits Systems

Protection Board's determinations unless they are clearly arbitrary and capricious, unsupported by substantial evidence or otherwise not in accordance with law." Aldrup v. Caldera, 274 F.3d 282, 287 (5th Cir. 2001); see also 5 U.S.C. § 7703(c)(1)–(3).[12]

First, the appellant claims that the MSPB's determination that he ingested cocaine was not supported by substantial evidence. The MSPB decided the issue on collateral estoppel grounds, looking to the finding of drug use by the administrative discharge board in the military proceeding. The appellant contests the MSPB's reliance on the finding of the administrative discharge board on this issue, arguing that because of errors in that proceeding, collateral estoppel should not apply. For all of the reasons already discussed, the appellant's claim that the military discharge proceedings were unfair and thus should not be relied upon is without merit. The MSPB's determination that collateral estoppel applied to this issue was not arbitrary or capricious.

Second, the appellant argues that the MSPB failed to consider his claim of innocent ingestion. However, the appellant has not offered any reason why the MSPB was required to consider this defense. The appellant's supervisor recommended his removal from his civilian position for the illegal use of drugs. The appellant has established no legal requirement that removal for drug use from his civilian position requires that the drug be knowing or intentional; as the district court noted, the appellant's reliance on military cases in making this

---

[12] Typically, appeals of MSPB decisions are heard by the Federal Circuit. See 5 U.S.C. § 7703(b)(1). However, if the MSPB addressed claims of discrimination, the challenge to the MSPB decision may—after following the correct procedures and exhausting the claims—be filed in federal district court. See § 7703(b)(2); 42 U.S.C. § 2000e-16. The district court had jurisdiction to review all the MSPB's decision as a "mixed case," because the claim to the MSPB was based both on discrimination allegations and other grounds. See Aldrup v. Caldera, 274 F.3d 282, 285 (5th Cir. 2001). In the district court, the appellant argued that the MSPB erred in failing to find that he was removed in retaliation for filing prior EEOC complaints. The appellant does not, however, pursue his retaliation claim on appeal and has therefore waived the issue. See Yohey v. Collins, 985 F.2d 222, 224–25 (5th Cir. 1993).

argument confuses the issue before the MSPB with the issue before the AFBCMR, the latter of which involved different requirements. The MSPB's resolution of this issue was not arbitrary or capricious.

Third, the appellant contends that the penalty of removal was unreasonable under the circumstances of his case and that the MSPB failed to consider the relevant factors articulated in Douglas v. Veterans Admin., 5 M.S.P.B. 313, 331–34 (MSPB 1981) for weighing the reasonableness of the agency's actions. The MSPB concluded that the agency considered the relevant factors. The MSPB also noted that the penalty of removal for a single use of cocaine had been approved in other cases. We defer to the MSPB's determination that removal was reasonable in this case. See Parker v. U.S. Postal Service, 819 F.2d 1113, 1116 (Fed. Cir. 1987) ("It is well established that the determination of the proper disciplinary action to be taken to promote the efficiency of the service is a matter peculiarly and necessarily within the discretion of the agency.").

Fourth and finally, the appellant argues that the removing official improperly raised a basis for the appellant's removal for the first time before the administrative board, a basis that had not been included in the Notice of Proposed Action. The removing official in the civilian action stated that his decision was based primarily on the decision of the discharge authority in the appellant's military discharge. The new basis was the fact that his discharge decision was based on the appellant's military discharge. However, because the basis underlying the military discharge was drug use, and the stated basis for the removal from his civilian position was also drug use, this argument is without merit.

The MSPB's decision was not arbitrary or capricious.

VI

19

For the reasons stated above, the district court's judgment is AFFIRMED in all respects.