**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 9, 2012

No.  11-10296

Lyle W. Cayce
Clerk

TERRENCE M. FILER,

Plaintiff - Appellant

v.

MICHAEL B. DONLEY, Secretary of the Air Force,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.

EDITH H. JONES, Chief Judge:

Terrence M. Filer ("Filer") was a dual-status Air Reserve Technician ("ART") in the 301st Maintenance Group ("301st MG") falling under the 301st Fighter Wing ("301st FW"). ARTs are full-time civilian employees who are also required to serve in the Air Force Reserve in the units for which they work as civilians. Filer was the Chief of Training Management of the 301st MG in his civilian capacity and a Technical Sergeant (E-6) and Chief of Training of the 301st MG in his military capacity. Filer alleges that he was subjected to a racially hostile work environment at the 301st MG, which caused him to leave his civilian job with the unit and lose his reserve position. The district court

No. 11-10296

granted summary judgment to the Secretary.  Because we conclude that the district court lacked jurisdiction over two allegations for failure to exhaust EEOC procedures and over a third one by virtue of the *Feres* doctrine, we VACATE the grant of summary judgment and remand with instructions to DISMISS.

## I. BACKGROUND

Filer's hostile work environment claim is based primarily on a single incident.  Filer was ordered to active duty from September 17th to September 21st, 2007 at the 301st MG.  On September 21, Filer walked into the office of Christopher Roark ("Roark"), a Quality Assurance Superintendent.  Roark, who was also an ART, was not Filer's direct supervisor, but was a Senior Master Sergeant and therefore a supervisory employee in the 301st.  Roark was not in his office, but Filer noticed a noose thumb-tacked to a inert grenade.  Roark referred to the grenade display as the "complaint department"; as a joke, the grenade had a sign saying "take a number," with a #1 sign attached to the pull pin.  When Filer returned later that day to speak to Roark about the noose, it was gone.  Roark had apparently been told by a coworker that Filer was offended by the noose.  Roark explained to Filer that he had found the noose while deployed in Iraq and brought it back to attach to the grenade "as a second choice for complaint[s]," but that he had thrown the noose away.

Filer left Roark's office and went to Chief Master Sergeant Martin Drewek, Filer's first-line civilian and military supervisor, to tell him about the noose. Drewek advised Filer that he thought the noose was related to Saddam Hussein's hanging, and that Filer should give Roark the benefit of the doubt. On September 27, Filer filed an informal EEO complaint.  At the conclusion of the

No. 11-10296

informal EEOC investigation two months later, Lt. Col. William Kountz,[1] the civilian manager and military commander of the 301st MG, issued an oral admonishment to Roark for the noose incident and directed Roark to take a course on equal opportunity sensitivity. Kountz also denied Roark a military promotion for one year and denied Roark a medal he earned in Iraq.

On January 10, 2008, a Command Directed Investigation ("CDI") of the noose incident was ordered by Colonel Kevin Pottinger, the military commander of the 301st FW. A CDI, separate from the formal complaint process, is instigated to gather, analyze, and record information about matters of interest to military command authorities. The CDI investigator concluded that Roark exercised poor judgment in displaying the noose and that the incident could have an adverse impact on the unit's cohesion.

Filer had filed a formal EEOC charge of discrimination on December 4, 2007, in which he alleged that the noose display was the basis for a racially hostile work environment. The resulting EEOC investigation was undertaken, and a final agency decision finding no hostile work environment issued in January, 2010. Filer timely brought this lawsuit against defendant Michael B. Donley, Secretary of the Air Force.

In his federal court complaint, Filer alleged that he was subjected to a racially hostile work environment by various acts and circumstances in addition to the noose incident. These include: the display of swastikas on a wall in the 301st MG workplace between September 13 and 23, 2005;[2] the creation of a work

---

[1] Kountz was Filer's second-line civilian supervisor and third-line supervisor in the military.

[2] With respect to the display of swastikas, which was not mentioned by Filer in either his informal or formal EEOC complaints, a different civilian employee brought an EEOC

No. 11-10296

environment and atmosphere in which white employees were given preferential treatment over non-white employees; and the promotion of white employees to management positions more frequently than non-white employees.

The Secretary moved to dismiss the suit under Fed. Rule of Civ. Proc. 12(b)(1) or (6), urging that the doctrine of intra-military immunity in *Feres v. United States*, 340 U.S. 135, 71 S. Ct. 153 (1950), prevented ARTs like Filer from seeking relief in court under Title VII. The district court denied the motion. The Secretary then moved for summary judgment, reiterating the applicability of the *Feres* doctrine, and contending alternatively that Filer could not establish a prima facie hostile work environment case. The district court granted summary judgment, holding that (1) because Filer's claim did not challenge the lawfulness of his discharge from the military or require a review of military personnel decisions, the *Feres* doctrine did not bar the claim; (2) the swastika incident and the allegations of preferential treatment to white employees were not in any way related to the noose incident, were therefore not exhausted, and could not be considered as contributing to the allegedly hostile work environment; and (3) no rational trier of fact would conclude that the noose incident alone was sufficiently severe or pervasive to create a hostile work environment. Filer timely appealed.

## II. JURISDICTION

Jurisdiction cannot be waived, and it is the duty of a federal court first to decide, *sua sponte* if necessary, whether it has jurisdiction before the merits of the case can be addressed. *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d

complaint in 2005 challenging the display on a wall in the 301st MG. An investigation concluded that the supervisor "failed to provide appropriate leadership and response to the discovery of swastikas."

No. 11-10296

297, 301 n.2 (5th Cir. 2005). The court reviews *de novo* legal conclusions by the district court about jurisdiction. *McKnight v. Dresser, Inc.*, 676 F.3d 426, 429 (5th Cir. 2012). Although the government's briefing on jurisdiction is sparse to non-existent in this court, there are two jurisdictional issues in this case. The first is whether Filer exhausted his administrative remedies under Title VII. *Pacheco v. Mineta*, 448 F.3d 783, 795 (5th Cir. 2006) (affirming the dismissal of the plaintiff's Title VII claim under 12(b)(1) because of the plaintiff's failure to exhaust administrative remedies); *Tolbert v. United States*, 916 F.2d 245, 249 (5th Cir. 1990) (district court had no jurisdiction over a Title VII claim because the plaintiff did not exhaust her administrative remedies). The second is whether the surviving claim is justiciable under *Feres*, 340 U.S. 135, 71 S. Ct. 153 (holding service member tort claims against the government non-justiciable).

The Supreme Court has held that while "subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S. Ct. 1563, 1570 (1999). *Ruhrgas* concluded that a court does not abuse its discretion where it dismisses a case based on a straightforward defect of personal jurisdiction instead of reaching a "difficult and novel question" of subject matter jurisdiction. *Id.* at 588, 119 S. Ct. at 1572. Because the Title VII exhaustion/jurisdiction issue raised in this case is clear cut compared with the *Feres* jurisdictional issue, we have discretion to dismiss on both grounds.

**1. Exhaustion**

Ordinarily, an employee may not base a Title VII claim on an action that was not previously asserted in a formal charge of discrimination to the EEOC, or that could not "reasonably be expected to grow out of the charge of

No. 11-10296

discrimination." *Pacheco*, 448 F.3d at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)).  The purpose of this exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws.  In hostile work environment claims, however, if one act alleged to have created the hostile environment is timely exhausted, "a court may consider 'the entire scope of the hostile work environment claim.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105, 122 S. Ct. 2061, 2068 (2002)).  To apply this "continuing violation doctrine . . . the plaintiff must demonstrate that the separate acts are related." *Id.*

Filer based his Title VII hostile work environment lawsuit on:

1.    The display of swastikas on a wall in the 301st MG workplace between September 13 and 23, 2005;

2.    The creation of a work environment and atmosphere in the 301st MG in which white employees were given preferential treatment over non-white employees;

3.    The creation of a work environment and atmosphere in the 301st MG in which non-white employees did not receive promotions to management positions as frequently as white employees; and

4.    The noose incident.

Despite this list of allegations, Filer identified only the noose incident in his EEOC complaints.  The noose incident is a properly exhausted, actionable claim.  The district court disregarded Filer's other allegations because they were in no way related to the actionable incident.  The district court reasoned, based on undisputed facts, that Filer did not know about the swastika incident until the

No. 11-10296

EEOC proceedings associated with this case, that Filer did not claim that any of the alleged preferential treatment of white employees affected him directly, and that Roark was not involved in any incident except the display of the noose.

We agree with the district court that Filer's other claims are unrelated to the only actionable claim and cannot be aggregated into a timely hostile environment claim. The court correctly held that it lacked jurisdiction to consider the other allegations as to which Filer failed to exhaust his administrative remedies. *See Pacheco*, 448 F.3d at 795; *Tolbert*, 916 F.2d at 249.

## 2. *Feres* Doctrine

The remaining jurisdictional issue is whether Filer's surviving claim is barred by the *Feres* Doctrine. In *Feres*, the Supreme Court held that the government "is not liable under the Federal Tort Claims Act ("FTCA") for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S. Ct. at 159. Three times, this court has interpreted *Feres* to prohibit judicial review of military employment-related decisions. In *Brown v. United States*, 227 F.3d 295 (5th Cir. 2000), an ART sued the government under Title VII, asserting that his discharge was discriminatory and retaliatory. This court held that Title VII waived the sovereign immunity of the military departments only for claims made by civilian employees, not those by members of the armed services. *Id.* at 298-99. Consequently, "[c]laims arising purely from an ART's civilian position are provided for under Title VII; claims that originate from an ART's military status, however, are not cognizable." *Id.* at 299. The plaintiff's claims in that case were categorized as "military personnel decisions," which are not reviewable in court. *Id.*

7

No. 11-10296

In *Walch*, this court considered whether *Feres* barred the discrimination and retaliation claims of a dual-status federal technician and member of the Texas National Guard who challenged his discharge from both his military and civilian positions. *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289 (5th Cir. 2008). In discussing how to approach claims that were difficult to classify as either arising from a plaintiff's civilian or military status, *Walch* stated that it "might turn to 'factors such as whether the conduct is integrally related to the military's unique structure.'" *Id.* at 299 (quoting *Brown*, 227 F.3d at 299 n.5). The court quoted with approval the Federal Circuit's list of claims that dual-status employees may not pursue: "those 'that relate to enlistment, transfer, promotion, suspension and discharge or that otherwise involve the military hierarchy.'" *Id.* at 300 (quoting *Jentoft v. United States*, 450 F.3d 1342, 1345 (Fed. Cir. 2006)). "Under these precedents," *Walch* concluded, "a court may not reconsider what a claimant's superiors did in the name of personnel management—demotions, determining performance level, reassignments to different jobs—because such decisions are integral to the military structure." *Id.* at 301. Because Walch challenged his dismissal from the Texas National Guard, his claim was deemed non-justiciable. *Id.*

Finally, in *Williams*, this court considered whether an ART could bring a Title VII claim challenging his discharge from his civilian and military positions stemming from a positive drug test he gave while on active status with the Air Force Reserve. *Williams v. Wynne*, 533 F.3d 360, 364 (5th Cir. 2008). This court approved the district court's determination that because the plaintiff "tested positive for cocaine use while on military status," his claim arose from his position as a uniformed service member; therefore, "the decision to discharge

him as a result was . . . a military personnel management decision, which was integral to the military structure and which we will not second guess." *Id.* at 368.

Several factors lead to the conclusion that Filer's hostile environment claim arose from his military status. First, Filer was on active duty when the noose incident occurred. The order to active duty is signed by Filer, is in the record before us, and states that Filer "is ordered to" active duty. This order was authorized by Lt. Col. William R. Kountz, the commander of the 301st MG, on May 31, 2007, several months before the incident. Moreover, the order specifies the dates on which Filer was to report for active duty and Filer confirmed that he performed active duty on the date of the noose incident with his signature dated September 24, 2007. In *Williams*, this court held that an event that occurred during the plaintiff's active duty arose from the ART's military status. 533 F.3d at 368. Granted, in *Williams,* the defendant was suing over his punishment for failing a drug test administered while on active status. Filer, in contrast, pursues a Title VII claim arising from conduct by another while he was on active status. Nevertheless, the status of the ART is significant because this court has stated that ARTs have both military and civilian hats "only one of which is worn at any particular time." *Walch*, 533 F.3d at 295. Active duty status is strong evidence of which hat is being worn.

Nothing in the record implies this incident is attributable to Filer's civilian role despite his active duty status. Filer's interaction with Master Sergeant Roark is not indicative of either status because they were co-workers in both spheres. Filer's civilian and military jobs were similar: Chief of Training Management of the 301st MG in his civilian capacity and Chief of Training of

No. 11-10296

the 301st MG in his military capacity.  Lt. Col. Kountz, who disciplined Roark, was Filer's boss in both his civilian and military capacities. We have no factual basis to conclude that Filer was performing "purely" civilian job duties instead of military job duties while he was assigned to active duty on September 21, 2009. *See Brown*, 227 F.3d at 299.

Perhaps most important to this analysis is the admonition in *Walch* that courts should not interfere with the military's decisions about personnel management.  533 F.3d at 301.  Filer challenges as inadequate the Air Force's response to the noose incident.  The Air Force conducted two separate investigations of the incident, one of which adjudged its impact on unit cohesion, while the other resulted in decisions about military promotion, awarding military honors, and appropriate training for military personnel. Lt. Col. Kountz had to clear his decision on Roark's military discipline with the FW Commander, Col. Pottinger.  A session of squadron-wide EEO training was ordered.  These decisions are "integrally related to the military's unique structure."  *Id.* at 299.  Judicial re-examination of such decisions would be disruptive to the military.  *Id.*

The district court held all three prior Fifth Circuit cases distinguishable because, unlike those cases involving a plaintiff's discharge from the military, "the court can safely adjudicate [Filer's hostile environment] claims without having to review military personnel decisions."  For the reasons just expressed, we disagree.  Moreover, because Title VII hostile environment claims often criticize the conduct of co-workers as well as supervisors, they are at least as likely as individual discharge claims to require close review of military structure, discipline, and cohesion.  *Feres* broadly prohibits tort suits where a service

10

No. 11-10296

person's injuries "arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S. Ct. at 159. It is the military environment, not the nature of the claim, that is controlling. In any event, attempting to distinguish Title VII discharge claims from hostile environment claims will often be at cross-purposes with the *Brown* trilogy and thus with *Feres*, because plaintiffs are apt to join such claims in a lawsuit and would have every incentive to do so if a hostile environment allegation is the key to the federal courthouse.

Filer's surviving Title VII claim is non-justiciable under *Feres* and this court's precedents. The district court should have dismissed this claim for lack of jurisdiction instead of ruling on the merits..

## III. CONCLUSION

Filer failed to exhaust his Title VII administrative remedies on all allegations except for the September 21st incident. Because the surviving claim arose from Filer's military service, *Feres* and *Brown* make that claim non-justiciable. We therefore **VACATE** the summary judgment and **REMAND** to the district court with instructions to dismiss for lack of jurisdiction.