# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 9, 2025

Lyle W. Cayce
Clerk

No. 25-30033

Mark Reddin,

*Plaintiff—Appellant*,

*versus*

John Phelan, *in his capacity as Secretary of the Navy and as Chairman of the Board of Correction of Naval Records*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:23-CV-1292

Before Dennis, Graves, and Duncan, *Circuit Judges*.

Per Curiam:[*]

This appeal challenges the Board for Correction of Naval Records (BCNR or Board)'s denial of Mark Reddin's petition to upgrade his military discharge characterization from Other-Than-Honorable to Honorable. The district court granted summary judgment in favor of Defendant-Appellee

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-30033

John Phelan in his official capacity as Secretary of the Navy,[1] concluding the Board's denial was not arbitrary, capricious, or unsupported by substantial evidence. For the reasons that follow, we AFFIRM.

I

Reddin served in the United States Navy from July 2001 until April 2002. His medical records reflect that, in November 2001, Navy physicians treated Reddin for a back injury sustained after lifting a "heavy person" during basic training. Following basic training, he was assigned to Electronic Attack Squadron 130 (VAQ-30).

In January 2002, Reddin's commanding officer charged him with two specifications of unauthorized absence, insubordinate conduct toward a petty officer, failure to obey a lawful order, intoxication on duty, and disorderly conduct of a nature to bring discredit upon the armed forces. He received non-judicial punishment (NJP) for this misconduct consisting of a reduction in paygrade, a suspended forfeiture of salary, and thirty days' correctional custody. Reddin's commanding officer transferred him to the Correctional Custody Unit at Puget Sound from January 24 to February 22, where he underwent the program's regimen of counseling, daily physical training, and life-skills instruction. At completion, the officer in charge reported that Reddin's performance was "less than satisfactory," remarking that he exhibited poor decision-making and might be subject to further discipline.

Approximately one month after his release from correctional custody and return to VAQ-30, Reddin submitted a urine sample that later tested positive for marijuana. He separately complained of back strain to Navy

---

[1] Under Federal Rule of Appellate Procedure 43(c), Secretary Phelan was automatically substituted for former Secretary of the Navy Carlos del Toro, who Reddin originally named.

physicians related to the lifting injury during basic training, but that report post-dated the submission of his urine sample.

On April 5, 2002, Reddin received another NJP for failure to obey a written order and for wrongful use of a controlled substance. Reddin's command notified him the same day that it would process him for administrative separation for drug abuse (a mandatory processing basis) and for a pattern of misconduct. Reddin waived his rights to challenge his administrative separation and declined participation in the Navy's Alcohol and Drug Abuse Program. He was discharged from the Navy with an Other-Than-Honorable service characterization on April 15, 2002.

Years later, in 2019, Reddin sought health-care benefits from the Department of Veteran Affairs. At an administrative hearing, he maintained that the alcohol and drug misconduct reflected in his service record was connected to self-medication for his back injury incurred in service. The VA denied Reddin's claim, noting that a discharge under Other-Than-Honorable conditions for willful and persistent misconduct is a bar to benefits. *See* 38 C.F.R. § 3.12(d)(4).

Reddin petitioned the BCNR to upgrade his discharge characterization to Honorable. The Board is a civilian body established by the Secretary under 10 U.S.C. § 1552, with procedures codified at 32 C.F.R. Part 723, to correct material errors or injustices in the records of current and former sailors and Marines. 32 C.F.R. § 723.2(a). It reviews applications on the written record, may deny relief if the record does not show a probable material error or injustice, and proceeds from a presumption of regularity— placing on the petitioner the burden to produce substantial evidence to the contrary. *Id.* §§ 723.2(b), 723.6(e)(1)–(e)(2). The regulations also permit reconsideration upon "new and material" evidence and require written decisions stating the reasons for the determination. *Id.* § 723.9.

No. 25-30033

The Board is bound by guidance directing "liberal consideration" of discharge-upgrade petitions involving mental-health considerations set out in three memoranda, commonly referred to by the surnames of their signatories: Hagel (2014), Kurta (2017), and Wilkie (2018). *See generally Doyon v. United States*, 58 F.4th 1235, 1238–39 (Fed. Cir. 2023) (discussing guidance memoranda). The Hagel Memorandum instructs correction boards to give liberal consideration where Post Traumatic Stress Disorder or related conditions might have mitigated the misconduct leading to an Other-Than-Honorable discharge, and to liberally waive time limits in such cases. The Kurta Memorandum extends that framework to other mental-health conditions, traumatic brain injury, and sexual assault or harassment; further, it cautions that premeditated misconduct is generally not excused, but notes that substance-seeking or self-medication may warrant consideration. It also emphasizes that liberal consideration does not itself mandate an upgrade. The Wilkie Memorandum adds guidance for upgrading discharge characterizations on equitable grounds, recognizing that policy changes may justify relief while reiterating that nothing in the guidance requires it. "Congress subsequently codified the liberal consideration standard into the BCNR's authorizing statute . . . when it amended 10 U.S.C. § 1552 to add sub-section (h)." *Id.* at 1239 (citing National Defense Authorization Act for Fiscal Year 2018, Pub. L. No. 115-91 § 520, 131 Stat. 1283, 1379, 1380 (2017)).

Reddin's petition to the BCNR asserted that his in-service back injury caused pain, which he self-medicated with alcohol and marijuana. Applying the Hagel, Kurta, and Wilkie "liberal consideration" guidance, the Board concluded there was "no convincing evidence" that Reddin suffered from a diagnosed mental-health condition while on active duty or that such a condition, if present, bore a mitigating relation to the misconduct underlying his discharge. Accordingly, the Board found no material error or injustice in

4

Reddin's Other-Than-Honorable discharge characterization and denied relief.

Reddin sought reconsideration of the BCNR's decision. In support, he submitted a report from Dr. Brett Valette, a licensed clinical psychologist, opining that the in-service back injury resulted in an undiagnosed somatic symptom disorder and that Reddin self-medicated with alcohol and marijuana. The Board requested an advisory opinion from a Navy clinical psychologist, Dr. Molly Summers. Dr. Summers reported that Reddin's service record contained "no evidence . . . that he was evaluated by a mental health provider in service" and provided "no clinical evidence to support" that "his misconduct associated with alcohol use was an attempt to medicate" his back pain. Even so, she recognized "it is possible that [Reddin's] alcohol use was a maladaptive coping strategy to alleviate both physical pain and psychological distress." She concluded that "there is some evidence that [Reddin] may have incurred a mental health condition during military service, and there is some evidence that his misconduct could be mitigated by a mental health condition."

The BCNR denied reconsideration. After reviewing the evidentiary submissions, the opinions of Dr. Valette and Dr. Summers, and weighing all potentially mitigating factors under the "liberal consideration" guidance, the Board again found "no convincing evidence" of a nexus between Reddin's claimed mental health condition and the charged misconduct during his service. Even assuming some mitigation, the Board "unequivocally concluded that the severity of [Reddin's] misconduct far outweighed any and all mitigation offered by such mental health conditions." The Board further observed that Reddin was actively receiving treatment for his back injury during his service—including prescribed, non-narcotic anti-inflammatories—and reasoned that any dissatisfaction with that regimen should have been addressed with Navy medical providers rather than

No. 25-30033

"tak[ing] matters into [his] own hands" by unlawfully using controlled substances.

Reddin sued under 5 U.S.C. § 702 of the Administrative Procedure Act, alleging the Board's decision was arbitrary, capricious, and unsupported by substantial evidence. On cross-motions for summary judgment, the district court sustained the Board's decision, concluding that it applied the appropriate standard for recharacterization of Reddin's discharge status, and that substantial evidence supported the denial of his petition. This appeal followed.

## II

Our review is de novo. *Buffalo Marine Servs. Inc. v. United States*, 663 F.3d 750, 753 (5th Cir. 2011). "Final decisions made by boards for the correction of military records," such as the BCNR, "are subject to judicial review under the APA and can be set aside if they are arbitrary, capricious, or not supported by substantial evidence." *Williams v. Wynne*, 533 F.3d 360, 368 (5th Cir. 2008). Our "review of military board judgments is 'exceptionally deferential,'" and we require only that the "the Board's decision minimally contain a rational connection between the facts found and the choice made." *Id.* (first quoting *Viles v. Ball*, 872 F.2d 491, 495 (D.C. Cir. 1989); and then quoting *Frizelle v. Slater*, 111 F.3d 172, 176–77 (D.C. Cir. 1997)); *see also Piersall v. Winter*, 435 F.3d 319, 322 (D.C. Cir. 2006).

## III

Reddin's contentions fall into two broad camps: (A) that procedures and protections drawn from different military discharge-review regimes, and from a class-action settlement resolving similar claims, should have governed his petition before the Board; and (B) even setting those threshold matters aside, the Board misapplied the governing standards and its denial cannot be reconciled with the administrative record, particularly the mental-health

submissions and asserted mitigating circumstances. We address and reject each in turn.

A

Reddin contends that the Board's decision is unlawful because it failed to apply certain requirements associated with military discharge review in 10 U.S.C. § 1553. He also claims membership in and an entitlement to automatic reconsideration of the adverse decision under the terms of a class-action settlement in *Manker v. Spencer*, No. 3:18-CV-00372 (D. Conn. Mar. 2, 2018). Both theories miss the mark.

To begin, Reddin misapprehends the distinct statutory regimes Congress created for military discharge review and record correction. Section 1553 governs the Naval Discharge Review Board (NDRB), which may "review the discharge or dismissal . . . of any former member of an armed force" within fifteen years of separation. 10 U.S.C. § 1553(a); 32 C.F.R. § 724.102. Section 1552, by contrast, authorizes the Secretary to "correct any military record" through the BCNR when "necessary to correct or remove an injustice." § 1552(a)(1); 32 C.F.R. § 723.2(a). Reddin did not petition the NDRB within the § 1553(a)'s fifteen-year window but instead expressly petitioned the BCNR "for correction of military record under the provisions of Title 10, U.S. Code, Section 1552." In that posture, the Board was obligated to apply § 1552 and its implementing regulations, not to import wholesale the procedures and requirements specific to § 1553. *See Bolton v. Dep't of the Navy Bd. for Correction of Naval Recs.*, 914 F.3d 401, 407 (6th Cir. 2019) ("The BCNR's statutory authority is found in 10 U.S.C. § 1552."); *O'Hare v. United States*, 155 Fed. Cl. 364, 378 (2021) ("The BCNR is bound by its own regulations.").

Nor do the requirements Reddin associates with § 1553 transpose onto § 1552 simply because both boards—BCNR and NDRB—consider

discharge-upgrade requests. He claims that the BCNR "is required to have a clinical psychologist, or someone trained in mental health activity, as one of its Board members" but secured only an advisory opinion from Dr. Summers in assessing his petition. This requirement, however, applies to NDRB proceedings. § 1553(d)(1)(A). Section 1552 contains no parallel mandate. Instead, the BCNR's framework contemplates obtaining and considering mental-health advisory opinions where appropriate, *see* § 1552(g)(1), which the Board did here before denying reconsideration. The Board's use of an advisory opinion rather than a clinician as a voting member thus reflected the governing statute and regulations. *See O'Hare*, 155 Fed. Cl. at 376 ("[A]lthough the BCNR is not an investigative body . . . it is authorized to request advisory opinions.").

Reddin's reliance on the *Manker* class settlement is similarly misplaced because that agreement governs NDRB proceedings, not record-correction petitions adjudicated by the BCNR. *See* Order Approving Settlement at 2–4, No. 3:18-CV-00372 (D. Conn. Feb. 15, 2022), Dkt. No. 219. By its terms, the settlement affords automatic reconsideration to qualifying veterans "who received less-than-Honorable discharges, applied to the NDRB for upgrades to Honorable, and the NDRB denied the applications." *Id.* at 8. Reddin did not pursue relief in the NDRB. Because his petition to the BCNR was properly adjudicated under § 1552—and because *Manker* speaks to NDRB proceedings under § 1553—the Board's decision was neither arbitrary nor capricious on these bases. *Williams*, 533 F.3d at 368.

B

Reddin also maintains that the Board failed to apply "liberal consideration" to his petition by effectively demanding a heightened "convincing evidence" showing. He also faults the Board for failing to

engage the timing and substance of the mental-health materials he submitted—particularly opinions linking in-service back pain to self-medication—and for discounting equity considerations recognized in the Wilkie Memorandum. He asserts that these errors render the Board's denial unsupported by substantial evidence on the administrative record. We disagree.

*First*, Reddin's charge that the Board repudiated the "liberal consideration" standard by insisting on "convincing evidence" misconstrues the record. The Board cited and applied the Hagel, Kurta, and Wilkie Memoranda, all of which call for "liberal consideration." It requested a mental-health advisory opinion and acknowledged that opinion's view that there was "some evidence" of an in-service condition and "some evidence" of mitigation. It then explained why, on this record, any mitigation did not carry the day. Although the Board's decision employs the phrase "no convincing evidence" in passing, when read in context (and paired, in the same sentence, with the Board's statement that the evidence was "insufficient" to show mitigation) the phrase functions as a colloquial description of the Board's state of persuasion, not a freestanding evidentiary threshold.[2] The Board, in other words, used the phrase descriptively rather than prescriptively. On this record, the Board applied the required liberal

---

[2] The relevant portion of the Board's decision reads, in part: "In accordance with the Hagel, Kurta, and Wilkie Memos, the Board gave liberal and special consideration to your record of service, and your contentions about any traumatic or stressful events you experienced and their possible adverse impact on your service. However, notwithstanding the [advisory opinion], the Board concluded that there was no convincing evidence of any nexus between any somatic symptom disorder and/or related symptoms and your misconduct, and determined that there was insufficient evidence to support the argument that any such mental health conditions mitigated the misconduct that formed the basis of your discharge. As a result, the Board concluded that your misconduct was not due to mental health-related conditions or symptoms."

consideration standard, did not demand more proof than the law or guidance requires, and evaluated the evidence accordingly.

*Second*, the Board adequately examined the timing and substance of the mental-health materials, and it reasonably found the chronology undercut a causal nexus between the asserted symptoms and the charged misconduct. The Board recounted Dr. Summers's advisory opinion addressing Dr. Valette's post-service evaluation that there was "some evidence" of an in-service mental-health condition and "some evidence" that the misconduct could be mitigated by it. Still, the Board noted Dr. Summers's observation that "there is no evidence in [Reddin's] service record that he was evaluated by a mental health provider in service," and that he supplied no "clinical evidence to support his contention" that "his misconduct associated with alcohol use was an attempt to medicate the same symptoms."

The contemporaneous record bears out that assessment. Following the November 2001 back injury, Reddin received NJP in January 2002 for absence without leave, insubordination, disobedience of a written order, intoxication on duty, and drunk and disorderly conduct—all unrelated to marijuana use and most unrelated to alcohol. At the same time, Reddin was "actively receiving treatment" for his back injury and was "prescribed strong non-narcotic anti-inflammatory medicine" before the January 2002 alcohol-related offenses. The same is true with respect to his marijuana use in March 2002, where Reddin supplied a positive urinalysis sample before reporting additional back pain at a later examination. Weighing this sequence alongside Dr. Summers's advisory opinion and the active lawful medical care, the Board reasonably concluded that the record did not establish a causal connection between any somatic-symptom-related condition and the charged offenses and, in all events, that the seriousness and pattern of misconduct outweighed any mitigation. *Cf. Ill. Cent. R.R. Co. v. Norfolk & W. Ry. Co.*, 385 U.S. 57, 69 (1966) ("It is not for the court [on substantial

evidence review] to strike down conclusions that are reasonably drawn from the evidence and findings in the case.").

Nor did the Board err in examining the equity considerations in the Wilkie Memorandum. The Board's decision, citing the Memorandum, explained that it had "considered and acknowledged [Reddin's] positive contributions to the Navy, the length of [his] active duty service to our nation, and [his] post-discharge achievements." Still, the Board weighed this against the severity of Reddin's misconduct, availability of lawful medical care, and his refusal to pursue the Navy's Alcohol and Drug Abuse Program, all of which bear on accountability. The guidance itself cautions that "liberal consideration does not mandate an upgrade" and that premeditated or serious misconduct is generally not excused, while allowing that substance-seeking or self-medication may warrant consideration. The Board's analysis tracks that balance. And, on balance, the Board found those considerations outweighed by the pattern and willfulness of Reddin's misconduct during his nine months of service.

At bottom, the Board's decision neither misstates the governing "liberal consideration" standard nor disregards Reddin's mental-health submissions or the equity factors; and, viewed through our "exceptionally deferential" lens, it rests on substantial evidence in the record. *Williams*, 533 F.3d at 368.

## IV

For the foregoing reasons, we AFFIRM the judgment of the district court.