# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 18, 2024

Lyle W. Cayce
Clerk

No. 23-60191

_____

Deborah Strickland,

*Plaintiff—Appellant*,

*versus*

Robert Wilkie; United States Department of Veterans
Affairs,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:18-CV-750

_____

Before Clement, Southwick, and Ho, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

　　The Department of Veterans Affairs ("VA") suspended an employee
for 15 days without pay after a series of events involving her supervisor. The
employee appealed her disciplinary decision to the Merit Systems Protection
Board ("MSPB" or "Board"), raising claims of disability discrimination as
an affirmative defense. The Board refused to consider the entire disciplinary
decision after determining one part of the decision was correct. The

No. 23-60191

employee then appealed to district court, which affirmed. We VACATE, REVERSE, and REMAND.[1]

FACTUAL AND PROCEDURAL BACKGROUND

Deborah Strickland is a secretary and timekeeper in the Information Technology office of the VA in Jackson, Mississippi. A series of events began in November 2017 that ended in Strickland's 15-day suspension. Feeling unwell on November 9, Strickland called the VA's "sick line" to report that she would not be coming into work. Because she had no remaining sick leave, she requested her time be categorized as annual leave. VA policy, however, required she seek approval from her supervisor before using annual leave. Because she had not sought that approval, her supervisor, Robert Wolak, marked her as absent without leave, or "AWOL." When Strickland returned to work on November 13, 2017, she confronted Wolak about the AWOL designation, leading to a heated confrontation.

That same day, Strickland spoke with Lisa Tyler-Gee, a Human Resource ("HR") specialist at the VA, who explained how to request leave under the Family Medical Leave Act ("FMLA"). On December 5, 2017, Tyler-Gee sent Strickland an FMLA memorandum to be signed by her supervisors. When she submitted the memorandum for signature, Strickland apparently made several changes that eliminated restrictions on her FMLA leave and made the memorandum appear to apply to her November 9 absence.

Also on December 5, Wolak met with Strickland and several union representatives. Another heated exchange ensued between Strickland and Wolak, and Wolak left the meeting. A few weeks later, on December 21,

---

[1] Judge Ho would affirm the district court's judgment.

No. 23-60191

2017, Wolak had another argument with Strickland after hearing her "ranting" about having to change another co-worker's timecard.

On January 12, 2018, the VA proposed terminating Strickland for these events. The VA presented Strickland with a copy of the proposal, but she refused to sign it. Under 38 U.S.C. § 714(c)(1)(B), Strickland had seven business days to respond to the proposal. She did so in writing on January 18. An additional meeting regarding the proposed removal was held in late January.

On February 5, the VA rescinded the January proposal because it listed the wrong deciding official. In a meeting with Wolak, other VA officials, and a union representative, Strickland was given a copy of a memorandum rescinding the January proposal and was shown a copy of a revised proposal. Strickland refused to sign either because her preferred representative was not present. The only difference between the two proposals was the change in the deciding official.

A few days later, on February 7, the VA issued the renewed proposal. Strickland was not at work to receive it because she had taken FMLA leave on February 6 and remained on leave until February 21. Consequently, VA officials emailed the proposal to Strickland's VA email address and sent paper copies via UPS and USPS to Strickland's latest address on file. Even though Strickland returned to work on February 21, she did not open the email containing the renewed proposal until February 27, citing a backlog of emails because of her absence as the reason for the delay. On March 2, Strickland sent an email containing her response to the renewed proposal to David Wagner, who was the deciding official under the January proposal. Strickland's response, however, was untimely because the statutory period to respond had expired. 38 U.S.C. § 714(c)(1)(B).

3

No. 23-60191

The correct deciding official, Jack Galvin, issued his decision on March 5, 2018. This was 17 business days after the February 7 proposal was issued, which is two business days longer than the 15-business day statutory deadline. § 714(c)(1)(A). The final decision repeated the charges and specifications contained in the February 7 proposal.[2] Galvin "sustained" each charge and specification, which are summarized as follows: "Charge I: Unauthorized Absence," with a single specification regarding Strickland's November 9 AWOL mark; "Charge II: Inappropriate Conduct," with two specifications regarding the altered FMLA memorandum; "Charge III: Conduct Unbecoming of a Federal Employee," with three specifications regarding Strickland's November 13, December 5, and December 21 confrontations with Wolak.

Despite finding that the charges were supported by substantial evidence, Galvin revised the proposed discipline from removal to a 15-day suspension. This was based on the seriousness of Strickland's conduct relating to Charge II (altering the FMLA memorandum), while considering that Strickland had "no prior record of discipline and that the suspension is reasonable and commensurate with the offense." Strickland's suspension went into effect on March 12, 2018.

Strickland timely appealed her temporary suspension to the MSPB,[3] contesting the charges, asserting that the VA violated her due process rights,

---

[2] Each "specification" is "a separate act or event that supports a charge." *Tartaglia v. Dep't of Veterans Affs.*, 858 F.3d 1405, 1407 n.2 (Fed. Cir. 2017).

[3] The Civil Service Reform Act of 1978 allows federal employees subjected to a particularly serious personnel action (including suspensions of more than 14 days) to appeal such decisions to the MSPB, *Kloeckner v. Solis*, 568 U.S. 41, 43, 44 n.1 (2012); 5 U.S.C. § 7512(2), "a quasi-judicial agency with the power to adjudicate disputes arising from adverse personnel actions taken against covered federal employees," *Zummer v. Sallet*, 37 F.4th 996, 1003 (5th Cir. 2022).

and raising affirmative defenses of discrimination and retaliation. An Administrative Law Judge ("ALJ") held a videoconference hearing on August 22, 2018. He conducted the hearing in a "trifurcated" manner. At the instruction of the ALJ, the parties first presented evidence regarding Strickland's claim that the VA deprived her of due process. After the ALJ determined that "no due process violation had occurred," the parties then presented testimony and evidence on the charges, with Charge III addressed first. The ALJ found that Charge III was supported by substantial evidence. The ALJ concluded that because Charge III was sustained, there was no reason to address Charges I and II at all. The third and final portion of the hearing addressed Strickland's affirmative defenses. The ALJ limited Strickland's presentation to evidence directly related to Charge III. Although Strickland sought to show her discipline was pretextual and unlawfully motivated and to establish comparators to support her discrimination claim, the ALJ refused to hear it.[4] Following the hearing, the ALJ issued his decision sustaining the suspension.

Strickland timely challenged the ALJ's decision by filing a complaint in the United States District Court for the Southern District of Mississippi. Her complaint challenged the manner in which the VA issued the discipline and the MSPB's post-disciplinary review. The complaint contained separate discrimination claims under the Rehabilitation Act (the same claims that served as the basis for her affirmative defenses). On the VA's motion to dismiss, the district court upheld MSPB's final decision and dismissed Strickland's Rehabilitation Act claims. Strickland timely appealed.

---

[4] After Strickland's counsel made a series of motions on the ALJ's decision to exclude such evidence, the ALJ denied them all and asked whether counsel had any "nonfrivolous motions [because he'd] like to get on with the rest of this proceeding."

DISCUSSION

Before reviewing the merits, we must assure ourselves of our own jurisdiction. *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 822–23 (5th Cir. 2022). Where appeals from the MSPB only allege violations of the Civil Service Reform Act, the Court of Appeals for the Federal Circuit has exclusive jurisdiction. 5 U.S.C. § 7703(b)(1)(A). On the other hand, "[w]hen an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a 'mixed case.'" *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) (emphasis in original) (quoting 29 C.F.R. § 1614.302). Mixed cases are properly appealed from the MSPB by filing a complaint in a district court. *Id.* at 50; § 7703(b)(2). The district court then decides both the issues of the MSPB's alleged errors and the plaintiff's discrimination claims, with the latter receiving *de novo* review. *Kloeckner*, 568 U.S. at 55 n.4; § 7703(c).

Here, Strickland appealed the MSPB's decision by filing a complaint challenging the decision as well as bringing claims of discrimination, retaliation, and failure to accommodate under the Rehabilitation Act. She therefore filed a mixed case over which the district court had jurisdiction under Section 7703(b)(2). *See Kloeckner*, 568 U.S. at 50. Because the district court's order granting summary judgment to the VA and dismissing Strickland's discrimination claims is a final appealable order, we have jurisdiction under 28 U.S.C. § 1291.

Our review of the MSPB's decisions on non-discrimination claims is deferential. We will uphold its determinations "unless they are clearly arbitrary and capricious, unsupported by substantial evidence or otherwise not in accordance with law." *Williams v. Wynne*, 533 F.3d 360, 373 (5th Cir. 2008) (citation omitted); 5 U.S.C. § 7703(c)(1)–(3). A determination is not

clearly arbitrary and capricious if the MSPB "has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Although this standard is deferential, "[o]ur deference . . . has limits." *Carey Salt Co. v. NLRB*, 736 F.3d 405, 410 (5th Cir. 2013). We set aside MSPB orders that are "unlawful or produced by unlawful procedures." *Zummer v. Sallet*, 37 F.4th 996, 1004 n.12 (5th Cir. 2022). We "must also discard MSPB factfindings unsupported by substantial evidence." *Id.* (quotation marks and citation omitted). Because the vast majority of appeals from the MSPB orders are reviewed by the Federal Circuit, "we look [there] for guidance" in the absence of controlling circuit precedent. *Aviles v. MSPB*, 799 F.3d 457, 461 (5th Cir. 2015).

On appeal, Strickland raises several issues with the MSPB's decision and the district court's review. One of these claims, however, is unexhausted and forfeited because it was not raised in the district court or before the MSPB.[5] Others have been properly preserved. We address those first.

I.    *The MSPB's review of the entire discipline and the* Douglas *factors*

The first two issues we address are Strickland's claims that the MSPB erred in refusing to review the VA's entire disciplinary decision and that both the MSPB and the VA erred by failing to analyze the non-exhaustive factors articulated in *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 332 (1981).[6] Both

---

[5] Strickland does not challenge the district court's *de novo* dismissal of her discrimination claims. She has therefore waived that issue on appeal. *See Williams*, 533 F.3d at 373 n.12.

[6] On Strickland's *Douglas* claim, the VA primarily argues that Strickland's arguments are waived because she failed to raise them before the MSPB. The VA appears to be correct about Strickland's failure to raise. Nevertheless, the district court addressed this issue, concluding that although the ALJ did "not appear to have done a formal review of the *Douglas* factors," his analysis was sufficient to satisfy that test *sub silentio*. Because the district court addressed this issue, we will as well. *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 n.2 (5th Cir. 2022) ("[A]n argument is not waived on appeal if

claims depend on whether a 2017 law changed any of the MSPB's legal obligations when reviewing VA disciplinary decisions. *See* Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017, Pub. L. No. 115-41, 131 Stat. 862 ("2017 Act" or "Act"). The MSPB's binding precedents prior to the Act held that ALJs are required to consider the entirety of an agency's disciplinary decision and consider the *Douglas* factors in doing so. *Douglas*, 5 M.S.P.B. at 325, 332–33; *see also* 5 C.F.R. § 1201.117(c). Thus, the issue is whether the Act gave the ALJ authority to depart from this binding precedent.

### a.     The 2017 Act

The 2017 Act was enacted, in part, to streamline the procedures through which the VA can remove employees based on performance or misconduct. Pub. L. No. 115-41, § 202, 131 Stat. at 869–73. With that goal, the Act created Section 714 in Title 38. *Id.* The changes made by this section relevant to this appeal are these: reduced the total time for a final decision to 15 business days from notice, 38 U.S.C. § 714(c)(1)(A), (2); reduced the time for the charged employee to respond to seven business days, § 714(c)(1)(B); lowered the VA's burden of proof before the MSPB by enacting a "substantial evidence" standard of review, § 714(d)(2)(A), (d)(3)(B); and prohibited the MSPB from mitigating the VA's chosen penalties, provided the VA's decision is supported by substantial evidence, § 714(d)(2)(B), (d)(3)(C). Although the Act made some changes to the VA's burden at the MSPB, the 2017 Act did not dictate any other rules of decision.

We are not the first court to decide whether the MSPB was required to consider the VA's entire disciplinary decision or the *Douglas* factors

---

the argument on the issue before the district court was sufficient to permit the district court to rule on it." (citation omitted)).

following passage of the 2017 Act. Since the MSPB decided Strickland's case, the Federal Circuit has decided both issues. *See Sayers v. Dep't of Veterans Affs.*, 954 F.3d 1370, 1375–79 (Fed. Cir. 2020); *Connor v. Dep't of Veterans Affs.*, 8 F.4th 1319, 1324–25 (Fed. Cir. 2021). Given the Federal Circuit's primary role on these issues, "we look [there] for guidance." *Aviles*, 799 F.3d at 461.

### b.    Federal Circuit decisions

Underlying the Federal Circuit's *Sayers* and *Connor* decisions is the presumption that Congress "know[s] the meaning courts have given its enactments." *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 216 (5th Cir. 2003); *see e.g.*, *Sayers*, 954 F.3d at 1375. We therefore presume that, in enacting the 2017 Act, Congress was aware of the MSPB and court precedents that required the Board to consider the agency's entire disciplinary decision and apply the *Douglas* factors. *See, e.g.*, *Douglas*, 5 M.S.P.B. at 325; *Archuleta v. Hopper*, 786 F.3d 1340, 1352–53 (Fed. Cir. 2015); *Purifoy v. Dep't of Veterans Affs.*, 838 F.3d 1367, 1371 (Fed. Cir. 2016). The question is whether anything in the 2017 Act suggests Congress intended to abrogate these decisions.

We start with *Sayers*, decided in 2020. In *Sayers*, an ALJ determined substantial evidence supported eight of nine specifications for one charge and one specification for another, but refused to review the penalty because she lacked the authority to mitigate it. *Sayers*, 954 F.3d at 1373. On appeal, the Federal Circuit held that nothing in Section 714 supports that the MSPB could not consider the VA's choice of penalty. *Id.* at 1375–76. Specifically, the Federal Circuit highlighted that Section 714(d)(2)(A) instructs ALJs to "uphold the *decision* of the Secretary *to remove, demote, or suspend* an employee under subsection (a) if the decision is supported by substantial evidence." *Id.* at 1375 (emphasis in original) (quoting 38 U.S.C. § 714(d)(2)(A). Section 714(a) requires the VA Secretary to decide whether an employee's

"performance or misconduct . . . *warrants such removal, demotion, or suspension*." *Id.* (emphasis in original) (quoting 38 U.S.C. § 714(a)(1)). The Federal Circuit interpreted this language as requiring the MSPB to review whether sufficient evidence supports the VA's decision that its chosen penalty is indeed warranted in light of the charges that are supported by substantial evidence. *Id.* Thus, the MSPB "cannot meaningfully review [the VA's] decision if it blinds itself to the VA's choice of action." *Id.*

The Federal Circuit applied similar reasoning in *Connor*. There, the VA contended the MSPB need not consider the *Douglas* factors under the bar on mitigating the VA's chosen penalty. *Connor*, 8 F.4th at 1325. The Federal Circuit held that Section 714 did not excuse the MSPB from considering the *Douglas* factors that it was previously obligated to consider under MSPB precedent. *Id.* at 1324–27. Although Section 714 precludes the Board from *mitigating* the VA's chosen penalty, nothing in Section 714 or its legislative history suggested that it "alter[ed] preexisting law" with respect to the VA's and the MSPB's obligations in selecting and reviewing a reasonable penalty. *Id.* at 1326.

The only statutory bases for the Government's arguments to the contrary in these cases were the changes to the standard of review at the MSPB and the bar on mitigating penalties. *See Sayers*, 954 F.3d at 1376–77; *Connor*, 8 F.4th at 1325. We acknowledge that a central purpose of the 2017 Act was to make disciplining VA employees easier and faster, *Sayers*, 954 F.3d at 1374, and these decisions may undermine that goal. Even so, congressional intent cannot overcome the plain text of a statute. *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642–43 (2022). Where Congress intends to alter existing law, "it usually provides a clear statement of that objective." *Banister v. Davis*, 140 S. Ct. 1698, 1707 (2020). Instead, the statutory language focused primarily on procedure over substance.

10

The Federal Circuit's decisions on these issues are persuasive. We next apply these decisions to the facts of this case.

### c.    *Application*

We begin with Strickland's entirety-of-the-decision claim. Though the Federal Circuit's analysis in *Sayer* primarily concerned whether the penalty itself must be considered, its decision applies equally to the review of an ALJ's obligation to consider all charges. The Federal Circuit held that Section 714 "does not override [Section] 7701(c)(2)(C), which requires the [VA's] decision to accord with the law, even if it is supported by the evidence." *Sayers*, 954 F.3d at 1376. "This requirement . . . has traditionally meant reviewing the adverse action decision in its entirety." *Id.* Nothing in Section 714 changed this obligation. The statute's plain meaning requires determining whether substantial evidence supports all charges and warrants the chosen penalty. *Id.* This decision supports Strickland's argument that the MSPB erred in reviewing only Charge III and excluding evidence not directly related to Charge III. That additional evidence was relevant to Strickland's discrimination defense.

The ALJ faulted Strickland for not presenting evidence to support her affirmative defense, yet it was the ALJ's decision to exclude such evidence that created the deficiency. There is no explanation in the record for why Charge III was chosen for this sole review. The decision ignores the impetus of Strickland's confrontations with Wolak and her AWOL designation (Charge I), and it views Charge III in isolation instead of as part of a series of events that led to the agency's disciplinary decision. This unexplained choice alone may make the ALJ's decision arbitrary and capricious. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). Moreover, the ALJ's choice creates some tension between the MSPB and Galvin, the deciding official, who seemed to consider the conduct in Charge II as the

most egregious.  These unexplained and incongruent determinations are the "absurd, unconstitutional results" that the Federal Circuit warned the MSPB's interpretation would lead to.[7]  *Sayers*, 954 F.3d at 1378.

Accordingly, the MSPB's decision was arbitrary and capricious, not supported by substantial evidence, and otherwise not in accordance with law. *Williams*, 533 F.3d at 373; 5 U.S.C. § 7703(c)(1)–(3).[8]

Next, we consider Strickland's *Douglas* claim against Galvin as the deciding official and the MSPB.  We reject the argument that Galvin failed to give adequate consideration to the *Douglas* factors.  Galvin recognized the "serious nature" of Strickland's alleged alteration of the FMLA memorandum and the damage it caused to "the integrity of the agency and those entrusted to serve the veteran."  This is a reasonable consideration of *Douglas* factors (1) and (8).  *Douglas*, 5 M.S.P.B. at 332.  Furthermore, Galvin considered the fact that Strickland "has no prior record of discipline" and arguably considered alternative penalties by revising the original proposed penalty of removal to a suspension of 15 days.  These considerations fall under *Douglas* factors (3) and (12).  *Id.*  Although Galvin could have said more and said it more clearly, such shortcomings are not reversible error.

---

[7] On appeal, the only defense the VA provides is that we should "not presume that an [ALJ] did not consider an issue because it did not expressly address that issue."  As a general principle, we agree. *See e.g.*, *Keel v. Saul*, 986 F.3d 551, 555–56 (5th Cir. 2021).  But we are not interpreting silence here.  The ALJ explicitly stated that he was not reviewing Charges I or II and explicitly prevented evidence from being introduced regarding Strickland's affirmative defenses.  We will not presume that the ALJ did something he explicitly stated he would not do.

[8] Strickland also argues the ALJ legally erred by adopting an overly narrow view of Strickland's affirmative defenses and excluding relevant evidence as a result.  The VA argues this claim is not properly preserved because Strickland failed to raise it in district court.  We find no distinction between this claim and Strickland's entirety-of-the-decision claim.  We do not address it further.

We also examine the ALJ's decision. The ALJ did not consider whether the penalty was reasonable in light of the *Douglas* factors. Instead, the ALJ stated that "if the agency is able to meet its burden of proof with respect to any one charge in a multi-charge disciplinary action, then that is sufficient to affirm the agency's action." By preventing any evidence on Strickland's affirmative defenses, including comparators, pretext, or any evidence related to Charges I and II, the ALJ blocked consideration of several *Douglas* factors. These include "whether the offense was intentional or technical or inadvertent" (part of factor (1)), "the employee's past work record" (factor (4)), "consistency of the penalty with those imposed upon other employees" (factor (6)), and "mitigating circumstances surrounding the offense" (factor (11)). *Douglas*, 5 M.S.P.B. at 332.

More fundamentally, to the extent the ALJ did analyze any of these factors, he failed to do so on the same terms as Galvin. Under *Douglas*, the MSPB's role "is essentially to assure that the agency did conscientiously consider the relevant factors and did strike a responsible balance within tolerable limits of reasonableness." *Douglas*, 5 M.S.P.B. at 332–33. ALJs must review whether the VA "establishes the facts on which [its] decision rests by the requisite standard of proof." *Id.* at 334. When there are multiple charges, *Douglas* instructs ALJs to "consider carefully whether the sustained charges merited the penalty imposed by the agency." *Id.*

The sole charge that Galvin explicitly discussed in analyzing *Douglas* is Charge II, altering of the FMLA memorandum. The ALJ did not consider anything related to Charge II. Instead, he reviewed only those facts related to Charge III and explicitly refused to consider other charges, even evidence or argument that was relevant to the VA's decision as a whole. The district court erred by failing to recognize this incongruence in Galvin's *Douglas* analysis and the MSPB's decision.

Thus, we hold that the MSPB's failure to consider the *Douglas* factors made its decision unsupported by substantial evidence and otherwise not in accordance with law. *Williams*, 533 F.3d at 373; 5 U.S.C. § 7703(c)(2)–(3).

## II.    *Due process and timeliness claims*

Strickland raises two additional procedural arguments. She asserts that she was denied due process when the VA sent her the February proposal while she was on leave from February 6 to February 21, 2018. Strickland also argues the VA's decision is invalid because it was untimely — that is, it was issued 17 business days after February 7 instead of the 15 business days required by 38 U.S.C. § 714(c)(1)(A).

Procedural due process rights in continued public employment are contingent on having a property right in said employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Pretermination notice and an opportunity to respond is required to satisfy due process, but an employee's pretermination due process rights are limited where post-termination process is available. *Id.* at 546–47.

It is undisputed that Strickland has a property interest in her continued employment at the VA. *See Stone v. FDIC*, 179 F.3d 1368, 1375 (Fed. Cir. 1999). Even so, we agree with the MSPB and the district court that the steps taken by the VA were sufficient to satisfy Strickland's pre-discipline due process rights. Strickland knew the contents of the VA's proposed discipline since January, submitted comments in response, participated in a meeting on them at the end of January, and met with officials again in February after the January proposal was rescinded and replaced without any substantive change. When VA officials realized that Strickland was absent on February 7, they sent a copy to her work email address and mailed copies through UPS and USPS to Strickland's address as reflected in the VA's records.

These actions constituted reasonably diligent steps by the VA to ensure that Strickland received the February proposal with sufficient time to file a written reply under the statute. *Cf. Banks v. FAA*, 687 F.2d 92, 95–96 (5th Cir. 1982) (faulting the agency for failing to take reasonable steps to ensure a disciplined federal employee had access to information the agency relied on); *Ramirez v. DHS*, 975 F.3d 1342, 1350–51 (5th Cir. 2020) (applying *Banks* where the agency made "no attempt" to obtain and produce evidence when doing so would not have been "unduly burdensome"). Accordingly, there was no denial of procedural due process.

On her timeliness argument, Strickland essentially argues that if she must strictly abide by the statutory deadlines in filing her response to the proposed discipline, the agency should be held to the same standard. Because it did not, she argues, the two-day delay in the final decision makes it invalid. But that is not the law.

Absent a statutory command, federal courts will not invalidate an agency's decision solely for exceeding a statutory deadline. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 159 (2003). In the federal employment context, an agency's failure to meet the statutory deadline for disciplinary decisions is considered a procedural error; harm to the employee must be shown, with the employee bearing the burden of showing harm. *Diaz v. Dep't of Air Force*, 63 F.3d 1107, 1109 (Fed. Cir. 1995). Strickland has not alleged she suffered any harm by the two-day delay that exceeded the 15-day statutory deadline, or that Congress stripped the VA of authority to act beyond the statutory deadline.

## III.    *Unexhausted and forfeited claim*

Finally, Strickland claims that Galvin, as the deciding official, erred by applying the "substantial evidence" standard of review instead of the "preponderance of the evidence" standard of proof that is normally required to

No. 23-60191

sustain an agency's proposed penalty. The VA argues this claim is forfeited because Strickland failed to raise it before the MSPB and the district court.[9]

We agree that the claim is unexhausted and forfeited. MSPB regulations generally require all evidence and arguments be presented to the ALJ before the record closes. 5 C.F.R. § 1201.59(c); *see also Bosley v. MSPB*, 162 F.3d 665, 668 (Fed. Cir. 1998). Although the ALJ's erroneous legal conclusions prevented Strickland from presenting relevant evidence and arguments, her "substantial evidence" claim could have been raised because it also applied to Charge III. Furthermore, although Strickland flagged the issue in district court in the same motion she raised her *Douglas* claim, the district court never addressed it.[10] Thus, Strickland's "substantial evidence" claim is not properly preserved, and we need not address it. *Bosley*, 162 F.3d at 668; *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

* * *

We VACATE the district court's and the MSPB's orders, REVERSE the district court in part, and REMAND to the district court with instructions to remand to the MSPB for additional proceedings consistent with this opinion.

---

[9] When the first entity of review is a federal agency, "issue exhaustion" generally precludes a subsequent reviewing court from addressing arguments not presented to the agency first. *See Crowe v. Wormuth*, 74 F.4th 1011, 1034 (9th Cir. 2023); *Bosley v. MSPB*, 162 F.3d 665, 668 (Fed. Cir. 1998). Waiver, forfeiture, and exhaustion all have exceptions. *See Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021); *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 477 (5th Cir. 1997). None apply here.

[10] The district court did cite the relevant authority, *Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290 (Fed. Cir. 2021), in its discussion of *Connor*.