NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BATRINA MARTIN,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

---

2024-2230

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-18-0363-I-1.

---

Decided: May 11, 2026

---

STEPHANIE RAPP-TULLY, Tully Rinckey PLLC, Washington, DC, for petitioner.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before PROST and TARANTO, *Circuit Judges*, and KOVNER, *District Judge*.[1]

PER CURIAM.

Dr. Batrina Martin formerly worked as a full-time Health Systems Specialist in Portsmouth, Virginia, for the Department of the Navy's Naval Medical Center (agency). In April 2017, the agency removed her from federal employment under 5 U.S.C. § 7513(a), which allows removal "for such cause as will promote the efficiency of the service," based on four charges—specific absences from work not supported by required medical documentation, a larger set of absences over an extended period, untimely completion of work, and misuse of government computer resources. Dr. Martin appealed her removal to the Merit Systems Protection Board (Board), and in the proceeding, she submitted additional medical records. The Board-assigned administrative judge (AJ) affirmed the agency's removal, without addressing those additional records. *See Martin v. Department of the Navy*, No. DC-0752-18-0363-I-1, 2018 WL 5018839 (M.S.P.B. Oct. 12, 2018) (*Initial Decision*); J.A. 44–57.[2] The full Board affirmed the *Initial Decision* as modified by supplementing the analysis to address the additional medical evidence. *See Martin v. Department of the Navy*, No. DC-0752-18-0363-I-1, 2024 WL 2992960 (M.S.P.B. June 13, 2024) (*Final Decision*). Dr. Martin appeals. We now affirm.

---

[1]    Honorable Rachel P. Kovner, District Judge, United States District Court for the Eastern District of New York, sitting by designation.

[2]    We cite the native page numbers of the *Initial Decision*, found in the Joint Appendix starting at J.A. 44.

I

A

Dr. Martin worked for the federal government for more than three decades, about two-thirds of that time at the agency. In 2013, while working full-time for the agency, she qualified for unpaid leave under the Family Medical Leave Act (FMLA) of 1993, Pub. L. 103-3, 107 Stat. 6 (codified at 29 U.S.C. §§ 2601–54; 5 U.S.C. §§ 6381–87), which entitles qualifying employees to twelve administrative workweeks of unpaid leave during a twelve-month period, *see* J.A. 631–32; *see also* 5 U.S.C. §§ 6382(a)(1)(D), 6383.

On December 12, 2014, the agency sent Dr. Martin a formal Letter of Requirement concerning her absences. J.A. 534–37. It stated, as relevant here, that her twelve-month period of FMLA entitlement had ended; it was "imperative that [the agency] can depend on [her] for full-time regular employment"; "[e]xcessive absenteeism adversely impacts the efficiency of [the agency's] mission and the scheduling of work"; "the granting of leave . . . must be monitored if abuse is suspected"; and starting immediately, in order for Dr. Martin to receive approval for any sick leave, annual leave, or leave without pay "for sick leave purposes," she would have to provide acceptable medical documentation that "address[es] [her] incapacity for work" and is signed personally by her treating physician. J.A. 534–35.

In 2015, the agency several times indicated to Dr. Martin that, although she had procured entitlement to FMLA leave (subject to its limits) during another twelve-month period, she was not properly specifying whether particular absences were for FMLA purposes and was not supplying the documentation required by the December 2014 Letter. *See* J.A. 309–10 (Feb. 2015); J.A. 144–45 (May 2015); J.A. 544–47 (Nov. 2015). In 2015 and again in 2016, the agency also suspended Dr. Martin for not timely completing

assignments. J.A. 329–32 (three-day suspension in September 2015); J.A. 343–47 (ten-day suspension in June 2016).

In August 2016, the agency notified Dr. Martin that she had exhausted her authorized FMLA leave, would not be eligible for additional FMLA leave until December 16, 2016, and did not then have any available (unused) annual or sick leave. J.A. 549–51. On September 28, 2016, the agency assigned her a task (preparing minutes for a meeting held that day) to be completed by October 6. J.A. 151. The record indicates that she characterized the task as "menial," J.A. 152, and she did not timely complete the assignment, J.A. 151–52.

Dr. Martin was absent from work from September 29, 2016, through October 31, 2016, without authorization. J.A. 781. During the absence, on October 11, Dr. Martin's supervisor had telephoned her, indicating that she had accrued "enough leave to account for [her] absences until" October 4, 2016, and that, starting on October 5, additional absences were unauthorized unless she could provide acceptable documentation, as required since December 2014. J.A. 539. On October 24, 2016, Dr. Martin furnished three medical documents to the agency, which determined, however, that they did not adequately show her incapacity to work during October 2016. J.A. 539, 541.

After Dr. Martin returned to work in November, one of her supervisors visited her office and observed material on her agency-issued computer screen that appeared related to potentially other employment and not her agency work. J.A. 153. Because the agency prohibits use of its computers for "personal financial gain," J.A. 377–79; *see* 5 C.F.R. § 2635.704, it searched her agency-issued computer, revealing documents, website activity, and pay records from the latter part of 2016 indicating that Dr. Martin was working part-time as an instructor at two universities. J.A. 153–54; *see* J.A. 171–306. As for the assignment given

on September 28, Dr. Martin had been given multiple extensions, the final deadline being November 21, but she did not complete the task until December 1.  J.A. 151–52.

In February 2017, the agency issued Dr. Martin a notice of proposed removal based on four charges.  J.A. 662–71.  First, Dr. Martin was charged with unauthorized absences on October 5–7, 14, and 17–19, 2016, based on her failure to submit acceptable medical documentation for being absent those seven days.  J.A. 663.  Second, she was charged with failing to maintain a regular work schedule for a full-time employee (despite the warning in December 2014), because, from August 5 to December 15, 2016, she was absent on 36.5 of the 91.0 workdays in the period, *i.e.*, roughly 40% of the time, none of those absences being FMLA leave.  *Id.*  Third, Dr. Martin was charged with not timely completing work assignments, reflected by her 2015 and 2016 suspensions and the September 28, 2016 assignment she submitted late, even with multiple extensions.  J.A. 664.  Fourth, Dr. Martin was charged with misusing her agency-issued computer for personal financial gain as a university instructor.  J.A. 664–65.

On April 3, 2017, the agency's deciding official ruled against Dr. Martin on all four charges, reciting her answers to the charges and making findings of inadequate documentation for the October absences (partly because Dr. Martin refused to furnish adequate documentation for confidentiality reasons), extensive absence from work, untimely completion of work despite extensions, and use of the government computer for private-university teaching.  J.A. 149–54.  The deciding official then considered the factors outlined in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305–07 (1981).  J.A. 154–59.  That consideration included recitation of a long series of disciplinary actions (such as letters of reprimand, counseling, requirement, or caution plus suspensions), J.A. 156–57, as well as a finding that the "numerous health issues" Dr. Martin asserted did not "excuse[] [her] behavior," J.A. 158.

Based on the *Douglas* analysis, the deciding official determined that Dr. Martin would be removed effective April 6, 2017.  J.A. 159.  The official stated that "each offense/charge alone supports [Dr. Martin's] removal[.]"  *Id.*

B

In March 2018, Dr. Martin appealed her removal to the Board.  In September 2018, as part of her prehearing submissions, Dr. Martin identified medical evidence that she had not previously furnished to the agency ("the additional evidence").  The additional evidence related to a mid-to-late 2016 diagnosis of breast cancer,[3] a November 2016 biopsy and related physical pain extending into 2017, and several health conditions, some of which affected her capacity to work before October 2016 and after January 2017.  J.A. 131–37; J.A. 75–81; *see also* J.A. 523; J.A. 630.  That evidence was provided in camera.  *See* J.A. 28.

On October 12, 2018, after holding the hearing requested by Dr. Martin, the AJ affirmed the agency's removal.  The AJ sustained each of the four charges against Dr. Martin; determined that there was a nexus between the conduct found and the efficiency of the federal service; and found the penalty of removal reasonable, specifically considering mitigating factors and more generally considering the *Douglas* factors.  *Initial Decision*, at 1–6.  The AJ reached those conclusions without addressing the additional medical evidence that Dr. Martin had submitted to the Board.  *See id.*

Dr. Martin sought full Board review, arguing, as relevant now, that the AJ improperly failed to address the new

---

[3]    There are varying accounts of when Dr. Martin was diagnosed, including August 2016, J.A. 645, October 2016, J.A. 151, and "on or around October 2016," J.A. 769.  On appeal here, Dr. Martin asserts August 2016, citing to the *Initial Decision*.  Martin Opening Br. at 6.

medical evidence at issue, which, Dr. Martin said, should have precluded sustaining the first three charges. J.A. 28–29. She also challenged, on several grounds, the AJ's finding for the agency on the fourth charge (her use of an agency-issued computer for personal financial gain), contending, for example, that even if she used the agency-issued computer for her university work, she could not have misused the computer because the relevant activity occurred outside of her scheduled hours at the agency. J.A. 29–31.

The full Board upheld the AJ's denial of relief, with some supplementation of the rationale. Addressing Dr. Martin's additional evidence, the Board determined that Dr. Martin had not provided any reason that the additional evidence rendered her unable to provide the agency with acceptable documentation that she was incapacitated for duty, and so it sustained the first (unauthorized absence) charge. *Final Decision*, at *2. With respect to the second and third charges, the Board reasoned that Dr. Martin provided no basis for disturbing the AJ's finding about Dr. Martin's failure to maintain a regular, full-time work schedule and merely reiterated arguments regarding her failure to timely complete work assignments, which the AJ had reasonably rejected. *Id.* at *3. Regarding the fourth charge (government computer use), the Board found no reversible error in the AJ's upholding of the charge based on the finding that Dr. Martin had admitted to using the computer in violation of the agency's regulations. *Id.* As to the removal penalty, the Board concluded that, even with Dr. Martin's medical conditions assigned more weight as a mitigating factor, the *Douglas* factors still supported removal as one reasonable penalty the agency could impose. *Id.* at *4. The Board thus affirmed the *Initial Decision* "[e]xcept as expressly modified to supplement the administrative judge's analysis of the agency's unauthorized absence charge and the reasonableness of the penalty[.]" *Id.* at *1.

Dr. Martin timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9).[4]

## II

On appeal, Dr. Martin challenges her removal entirely under the standard requiring that a removal be "for such cause as will promote the efficiency of the service," 5 U.S.C. § 7513(a), appealing the Board's finding that the agency proved its charges and reasonably chose the penalty of removal for the proved conduct. Dr. Martin's challenge rests on various contentions about her additional medical evidence supplied to the AJ (but not previously to the agency), chiefly the contention that the AJ did not address that evidence. She does not raise issues about discrimination, the FMLA, whistleblowing, or other matters.

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been

---

[4] Before the Board, Dr. Martin unsuccessfully asserted certain affirmative defenses of discrimination. *See Initial Decision*, at 6–10; *Final Decision*, at *1, 3–4. Those assertions, unless abandoned, would render her appeal a mixed case whose resolution by the Board would be outside our jurisdiction to review. *See* 5 U.S.C. §§ 7702, 7703(b)(1)(A), (b)(2); *Perry v. Merit Systems Protection Board*, 582 U.S. 420, 431–32 (2017). But we read her required "Statement Concerning Discrimination" (Form 10) under Federal Circuit Rule 15(c)(1) as abandoning those defenses—not just in this forum but in any forum. Form 10, ECF No. 14 (Dec. 30, 2024); *see also* Response Br. at 9 n.4 (government also so reading the Form). That abandonment is necessary and sufficient for us to exercise jurisdiction here. *See Harris v. Securities & Exchange Commission*, 972 F.3d 1307, 1318 (Fed. Cir. 2020).

followed; or (3) unsupported by substantial evidence[.]"  5 U.S.C. § 7703(c).  We review the Board's legal rulings de novo, *Chambers v. Department of the Interior*, 602 F.3d 1370, 1375 (Fed. Cir. 2010), and its factual findings for substantial-evidence support, *Knox v. Department of Justice*, 125 F.4th 1059, 1064 (Fed. Cir. 2025).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938), even if an opposite conclusion might also be supportable, *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20 (1966).  Dr. Martin bears the burden of establishing errors in the Board's determinations.  *See Harris v. Department of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).  Applying those standards, we reject Dr. Martin's arguments.

## A

Dr. Martin argues that we should set aside the *Final Decision* because the AJ in the *Initial Decision* did not address the additional medical evidence Dr. Martin submitted for review in camera.  Martin Opening Br. 8—9, 11—13.  That argument focuses on the wrong decision.

As the *Initial Decision* itself and the Board's regulations make clear, the *Initial Decision* was not a final decision.  *See Initial Decision*, at 11; 5 C.F.R. §§ 1201.113(a), 1201.114, 1201.115.  Within the 35 days allowed, Dr. Martin petitioned for full Board review, the Board then granted such review, and the Board thereafter issued the actual final decision, which addressed the evidence now at issue.  Under 28 U.S.C. § 1295(a)(9), what we review is the "final order or final decision" of the Board pursuant to 5 U.S.C. § 7703(b)(1), (d).

In rendering the *Final Decision*, the Board expressly considered and made modified findings and conclusions based on that medical evidence, as Dr. Martin recognizes.  Martin Opening Br. at 9.  Because "the Board is free to

substitute its judgment for that of one of its administrative judges" (while giving appropriate weight to the AJ's demeanor-based findings), the question for us is not whether the *Initial Decision* improperly failed to address Dr. Martin's in camera evidence in the first instance, but whether the Board failed adequately to address the evidence in the *Final Decision. See Leatherbury v. Department of Army*, 524 F.3d 1293, 1304 (Fed. Cir. 2008). Although Dr. Martin cites *Sayers v. Department of Veterans Affairs*, 954 F.3d 1370, 1377 (Fed. Cir. 2020), and *Strickland v. White*, 105 F.4th 285 (5th Cir. 2024) (a mixed case that went to district court, then the Fifth Circuit), those decisions are not to the contrary: In both, the AJ's decision did become the final decision, without any review by the full Board. *See Sayers*, 954 F.3d at 1372 & nn.1–2, 1373; *Strickland*, 105 F.4th at 290.

B

Dr. Martin has also not shown reversible error regarding the Board's findings about the additional evidence. *See* Martin Opening Br. at 14–18. All or most of Dr. Martin's contention in this respect concerns the first charge, *i.e.*, her failure to provide administratively acceptable documentation for seven specific days of absence in October 2016. On that charge, the Board determined that she had not shown how the additional medical evidence undermined the finding of such a failure, which rested in part on her simple refusal to supply confidential medical records. *Final Decision*, at *2. We see no error in that determination.

Much of Dr. Martin's evidence does not relate to October 2016. See J.A. 131–37; J.A. 75–81. For example, the biopsy pain evidence concerns a time *after* October 2016, J.A. 132; *see also* J.A. 523, and other highlighted evidence appears limited to conditions *before* October 2016, such as the physician's estimate that she was incapacitated from January 28, 2016, to February 12, 2016, J.A. 105. A decision by an examiner for unemployment benefits, which was

not for FMLA leave, does not imply adequacy of Dr. Martin's medical documentation, as the examiner indicated. J.A. 779–83 (documentation "may not have met the employer's criteria"). Dr. Martin was under a specific instruction requiring her to supply adequate documentation for health-related absences, like the October absences at issue, not covered by FMLA leave, and the lawfulness and propriety of that instruction are not in dispute here. The additional medical evidence does not show that her conditions prevented her from supplying such documentation before the removal. *See Final Decision*, at *2 (relying on *Thom v. Department of the Army*, 114 M.S.P.R. 169, 173 [¶ 6] (2010)).

Dr. Martin adverts to the second charge, *i.e.*, her failure to maintain a regular, full-time schedule, but as the Board reasonably explained, the additional medical evidence has not been shown to undermine the finding that the charge was proved. *Final Decision*, at *3. In her briefs here, Dr. Martin emphasizes her substantial health problems before her removal, but she has not shown how those problems, by themselves, undermine the second charge. Dr. Martin also makes no meaningful argument about the medical evidence and the untimely-completion-of-assignment charge, as to which the evidence shows that, after returning to work November 1, 2016, she was granted two further extensions to complete the assignment to November 21, 2016, but failed to timely do so until December 1, 2016, J.A. 151–52, despite engaging in work related to her university teaching during early-to-mid November 2016, *see* J.A. 171, 223–28, 293; *see also* J.A. 153–54. In addition, for none of the charges has Dr. Martin shown substantive errors or deficiencies of analysis in the Board's decision like those identified in the *Sayers* and the *Strickland* cases, both of which involved the "reasonableness" standard of 38 U.S.C. § 714, which is not at issue here. *See Sayers*, 954 F.3d at 1378 (rejecting the notion that removal must be upheld even for minor infraction); *Strickland*, 105 F.4th at 293–94 (finding

improper failure to consider entire decision and improper preclusion of affirmative defenses and mitigating circumstances).

C

Dr. Martin challenges the Board's determination that removal was a reasonable penalty and its application of the *Douglas* factors. We see no error regarding the penalty.

For one thing, as the Board noted, the agency had concluded that any one of the four charges sufficed to warrant Dr. Martin's removal. *Final Decision*, at \*4; *see also Initial Decision*, at 6; J.A. 159. And the Board affirmed without modification the AJ's finding in the *Initial Decision* for the agency on the fourth charge, which involved her use of an agency-issued computer for personal financial gain (her outside, unrelated teaching activities). *Final Decision*, at \*3; *Initial Decision*, at 4–5; J.A. 29–31. On appeal here, Dr. Martin presents no challenge regarding that charge. Moreover, the Board considered Dr. Martin's mitigating evidence and appropriately determined that removal was a reasonable penalty under all the circumstances. *Final Decision*, at \*4. And it did so after modifying the *Initial Decision* to account specifically for Dr. Martin's additional medical evidence.

The Board's review of an agency's penalty decision is deferential, *see, e.g., Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999), and in our review of the Board's decision on that issue (as on others), our task is not to "reweigh the evidence," *Henry v. Department of the Navy*, 902 F.2d 949, 951 (Fed. Cir. 1990); *see also Campana v. Department of the Navy*, 873 F.2d 289, 290–91 (Fed. Cir. 1989) (affirming removal for unsatisfactory attendance weighed against mitigation considerations pertaining to illnesses during those absences). Dr. Martin's reliance on *Malloy v. United States Postal Service*, 578 F.3d 1351 (Fed. Cir. 2009), is misplaced. There, the AJ failed to consider material medical evidence in its analysis of the *Douglas* factors,

and the full Board denied review under 5 C.F.R. § 1201.115. No such circumstances are present here. The Board in this matter used Dr. Martin's medical evidence reviewed in camera in the *Final Decision*.

## III

We have considered Dr. Martin's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's final decision.

The parties shall bear their own costs.

**AFFIRMED**